UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>  Defendants. | No. 25 Civ. 1237 (DLC) |

## DECLARATION OF GREG HOGAN

1. My name is Greg Hogan. The following is based on my personal knowledge or information provided to me in the course of performing my duties, including information provided by the U.S. Office of Personnel Management's (OPM) human resources department.

2. I am currently employed at OPM as the Chief Information Officer. I began my service at OPM on January 20, 2025.

3. In my role at OPM, I have the following responsibilities pursuant to 40 U.S.C. § 11315:

    a. I am responsible for the development and maintenance of OPM's IT and information resources infrastructure.

    b. I advise agency leadership regarding the acquisition and management of IT resources.

    c. I am responsible for strategic planning regarding OPM's information management functions. This includes developing strategies to ensure personnel interact with these systems securely and efficiently.

4. Before joining OPM, I was Vice President of Infrastructure at comma.ai. I have more than 20 years of experience in the private sector in information technology and a degree in Computer Engineering.

5. I am a full-time, noncareer Senior Executive Service employee at OPM. I am not a Special Government Employee. I have completed OPM's privacy, IT security, and ethics trainings.

6. On January 20, 2025, President Trump issued Executive Order 14,158, redesignating the United States Digital Service as the United States DOGE Service (USDS).  The E.O. directs USDS to modernize government technology and software to increase efficiency and productivity.  The E.O. further directs agency heads to grant USDS full and prompt access to all unclassified agency records, software systems, and IT systems to the maximum extent consistent with law, while requiring USDS to adhere to rigorous data protection standards.  President Trump has also issued orders directing significant reforms of the federal workforce. USDS assists in that project too. *See, e.g.*, *Reforming the Federal Hiring Process and Restoring Merit to Government Service*, E.O. 14170 (Jan. 20, 2025); *Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*, E.O. 14210 (Feb. 14, 2025).

7. I am not an employee or detailee at USDS or any other federal agency or instrumentality besides OPM.

8. OPM plays a critical role in overseeing and managing the federal workforce.  Given that central role, numerous OPM employees, both political and career, have contributed to facilitating the President's initiatives related to workforce reform, including the deferred resignation program that closed on February 12.

9. OPM employees who have participated in workforce reform, like all OPM employees, are subject to applicable privacy, ethics, and other requirements.

10. Many OPM employees involved in these efforts hold policymaking, legal, or similar positions that do not require access to sensitive OPM data systems.

11. OPM data systems containing personally identifiable information include Electronic Official Personnel Folder (eOPF), Enterprise Human Resources Integration (EHRI), USAJOBS, USA Staffing, USA Performance, and Health Insurance, which houses Federal Employees Health Benefits (FEHB) and Postal Service Health Benefits (PSHB) data.  Each of these systems requires authentication for internal access.  Systems requiring authentication are designed to default to no access, and access is granted on a least-privilege or need-to-know basis by the System Owner and relevant Authorizing Official.

12. For systems engineers who require access to sensitive OPM data systems, OPM regularly reviews access permissions to ensure that they are appropriately limited.  For example, in early February, I directed my team to remove access to eOPF and EHRI for three engineers whose job duties do not require prospective access.  In addition, access is generally revoked after 60 days of inactivity.

13. The five key systems engineers, besides myself, implementing Executive Order 14,158 are all employees of OPM. They were onboarded directly by OPM. To the best of my knowledge, all have completed ethics trainings and training related to records management, cybersecurity, or data privacy. None of these individuals has access to EHRI, though that could change if their duties require access in the future.

14. I am aware that some OPM employees also have employment relationships, such as detail agreements, with other agencies. Those employees are subject to applicable privacy requirements in their handling of OPM data. For example, one of the engineers who has participated in workforce reform efforts is a paid employee at another agency but simultaneously serves as an unpaid Special Government Employee at OPM. When performing work at OPM, he is subject to supervision by OPM leadership and utilizes an OPM-issued laptop. He does not have access to eOPF or EHRI, and the memorandum of understanding between OPM and the other agency expressly states that he shall not share any OPM data with the other agency without appropriate permissions.

***

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, DC this 19th day of February.

_Gregory J Hogan_
Greg Hogan