# Exhibit A

```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
 2                         SOUTHERN DIVISION
     _____
 3                                   )
     AMERICAN FEDERATION OF          )
 4   TEACHERS, et al.,               )
                                     )
 5                 Plaintiffs,       )
                                     )
 6       v.                          )  Case No. 8:25-cv-00430-DLB
                                     )
 7   SCOTT BESSENT, et al.,          )
                                     )
 8                 Defendants.       )
     _____)
 9
                                       Greenbelt, Maryland
10                                     February 19, 2025
                                       10:11 a.m.
11

12                         MOTIONS HEARING
               BEFORE THE HONORABLE DEBORAH L. BOARDMAN
13                  United States District Judge

14
                       A P P E A R A N C E S
15
     ON BEHALF OF THE PLAINTIFFS:
16
         MUNGER, TOLLES & OLSON LLP
17       601 Massachusetts Avenue, N.W., Suite 500 E
         Washington, D.C.  20001
18       BY:  XIAONAN APRIL HU, ESQUIRE
              (202) 220-1123
19            april.hu@mto.com

20                          (Continued)

21

22

23              PATRICIA KLEPP, RMR
             Federal Official Court Reporter
24           6500 Cherrywood Lane, Suite 200
               Greenbelt, Maryland  20770
25                  (301) 344-3228
```

|    |                                                                   |
|----|-------------------------------------------------------------------|
| 1  | <u>A P P E A R A N C E S</u> (Cont'd)                             |
| 2  | <u>ON BEHALF OF THE PLAINTIFFS</u>: (Continued)                   |
| 3  | MURPHY ANDERSON PLLC                                              |
|    | 1401 K Street, N.W., Suite 300                                    |
| 4  | Washington, DC  20005                                             |
|    | BY:   MARK HANNA, ESQUIRE                                         |
| 5  | (202) 223-2620                                                    |
|    | mhanna@murphypllc.com                                             |
| 6  |                                                                   |
|    | PROTECT DEMOCRACY                                                 |
| 7  | 2020 Pennsylvania Avenue, N.W., Suite 163                         |
|    | Washington, D.C.  20006                                           |
| 8  | BY:   KRISTY PARKER, ESQUIRE                                      |
|    | (202) 424-9906                                                    |
| 9  | kristy.parker@protectdemocracy.org                                |
| 10 | <u>ON BEHALF OF THE DEFENDANTS</u>:                               |
| 11 | UNITED STATES DEPARTMENT OF JUSTICE                               |
|    | Civil Division, Office of the Assistant Attorney General          |
| 12 | 950 Pennsylvania Avenue, N.W.                                     |
|    | Washington, D.C.  20530                                           |
| 13 | BY:   EMILY MARGARET HALL, TRIAL ATTORNEY                         |
|    | (202) 307-6482                                                    |
| 14 | emily.hall@usdoj.gov                                              |
| 15 | UNITED STATES DEPARTMENT OF JUSTICE                               |
|    | Civil Division, Federal Programs Branch                           |
| 16 | Poc Agostinho, Jean                                               |
|    | 1100 L Street, N.W., Suite 8142                                   |
| 17 | Washington, D.C.  20530                                           |
|    | BY:   ELIZABETH J. SHAPIRO, DEPUTY DIRECTOR                       |
| 18 | (202) 307-0340                                                    |
|    | elizabeth.shapiro@usdoj.gov                                       |
| 19 |                                                                   |
|    | UNITED STATES ATTORNEY'S OFFICE                                   |
| 20 | 36 S. Charles Street, 4th Floor                                   |
|    | Baltimore, Maryland  21201                                        |
| 21 | BY:   ARIANA WRIGHT ARNOLD, ASSISTANT U.S. ATTORNEY               |
|    | (410) 209-4813                                                    |
| 22 | ariana.arnold@usdoj.gov                                           |
| 23 | <u>ALSO PRESENT</u>:                                              |
| 24 | CHRISTOPHER HEALY, SENIOR ADVISOR TO THE GENERAL COUNSEL,         |
|    | DEPARTMENT OF THE TREASURY                                        |
| 25 |                                                                   |

```
 1   in this circumstance.
 2           THE COURT:  I think we can agree, there's no
 3   injunctive relief if you are bringing a Privacy Act -- a cause
 4   of action under the Privacy Act, correct?
 5           MS. HALL:  Correct.
 6           THE COURT:  But this is an action under the
 7   Administrative Procedures Act for injunctive relief.  And as I
 8   read Footnote 17 of this Fourth Circuit case, it authorizes
 9   injunctive relief for a government's violation of the
10   Privacy Act as being appropriate and authorized by the APA.  I
11   don't know how else to read that footnote.
12           MS. HALL:  Your Honor, I think that the government's
13   main point on this is that the facts in Doe v. Chao were quite
14   different from these and involve a broad disclosure.
15           THE COURT:  Okay, I understand.
16           All right.  Anything else on standing?
17           MS. HALL:  Your Honor, I would also just identify that
18   the future harms that Plaintiffs identified, the risk of
19   identity theft, the risk of records or systems of records being
20   fed into outside systems and causing Plaintiffs, you know,
21   innumerable harms that they identify in their briefing, is
22   purely speculative and is not actual or imminent, as required
23   under Supreme Court standing doctrine.
24           THE COURT:  What do I do about all of the news
25   articles that they have attached to their reply and also cited
```

```
 1   in their complaint about possible feeding of this information
 2   into AI, accessing information through unsecure means?  What do
 3   I do with those news reports?
 4              MS. HALL:  Well, Your Honor, I think it's important
 5   that newspaper articles shouldn't be admitted for the truth of
 6   their contents, and most of these newspaper articles, notably, I
 7   think, are relying on anonymous sources.  So I think, while the
 8   Court may, you know, look at these articles for the fact that
 9   they exist and for, you know, perhaps why Plaintiffs have filed
10   this suit, I don't think that they are admissible as
11   representing the truth of what's going on.
12              THE COURT:  Okay, that's fair; they are in an
13   information vacuum, they don't have inside information.  You do,
14   you're the government.  Has the government put any of the
15   plaintiffs or any personal information, have any of these
16   DOGE people put any of the personal information into an
17   AI system?
18              MS. HALL:  It is my understanding that to the extent
19   any automation is occurring, it's all occurring consistent with
20   all applicable law.
21              THE COURT:  So the answer might be maybe, but if it
22   is, it's subject to applicable law?
23              MS. HALL:  That's correct, Your Honor.
24              THE COURT:  Okay.
25              Okay.  Anything else on standing?
```

```
 1   Mr. Hogan.
 2           MS. HALL:  Okay.
 3           THE COURT:  From the three respective agencies.  In
 4   order to perform their duties, is it your position that they
 5   need access to every piece of personally identifying information
 6   in every system of record in their respective agency?
 7           MS. HALL:  My position is that -- so I'll start with
 8   Mr. Krause.  Mr. Krause, at Treasury, has what's called
 9   over-the-shoulder access to particular databases as outlined in
10   his declaration, and I believe Mr. Gioeli's declaration as well,
11   and it is the government's position that he does need access to
12   all of the information in those systems in order to perform his
13   duties and ensure that all of his duties are able to be
14   performed properly.
15           THE COURT:  Okay.  Why?
16           MS. HALL:  Your Honor, because Mr. Krause is tasked
17   with broad, sweeping reforms and reviews in a way that requires
18   a broad, sweeping review of these systems in order to assess
19   what kinds of issues and modernizations may be available and
20   appropriate, and I think without access to those pieces of
21   information and specifically those systems of records, which is
22   the relevant level of analysis under the Privacy Act, he
23   can't make those assessments of how to improve efficiency, how
24   to ensure that there are not fraudulent payments going out the
25   door, how to make sure that government resources are not wasted
```

```
 1   on inefficient systems or improper payments.
 2           THE COURT:  Do the systems of records that he has
 3   access to include people's Social Security numbers?
 4           MS. HALL:  That is my understanding, yes.
 5           THE COURT:  Does he need access to anyone's
 6   Social Security number to perform his duties?
 7           MS. HALL:  That is my understanding, yes, is that he
 8   needs access to the systems of records that contain
 9   Social Security numbers, in part because matching those
10   Social Security numbers can help to eliminate fraud.
11           THE COURT:  So he's going line by line and looking at
12   Social Security numbers and matching or finding un-matching
13   Social Security numbers?
14           MS. HALL:  Your Honor, I'm not sure precisely how he's
15   performing these tasks, so I can't make a representation on that
16   point.
17           THE COURT:  Do these systems of records, are they able
18   to redact things like Social Security numbers, dates of birth,
19   bank account numbers?
20           MS. HALL:  I don't know, Your Honor.
21           THE COURT:  You don't know?
22           MS. HALL:  I don't know, Your Honor.
23           THE COURT:  Plaintiffs' counsel told me that she
24   thought it was possible, but you don't know.
25           MS. HALL:  I don't -- I can't make a representation on
```

```
 1   that point at this time.
 2           THE COURT:  Okay.
 3           Let's switch to Mr. Ramada.
 4           MS. HALL:  Yes, Your Honor.
 5           THE COURT:  Does he need full access to all personally
 6   identifying information in the systems of record at the
 7   Department of Education to perform his duties?
 8           MS. HALL:  Yes, Your Honor, it is my understanding
 9   that he does need access to the system of records that he has
10   been granted access to in order to perform the duties that we
11   identified from his declaration.
12           THE COURT:  Why?
13           MS. HALL:  Your Honor, I think that's for somewhat
14   similar reasons.  He's trying to identify waste, he's trying to
15   identify fraud, and without access to these systems and the
16   information contained within those systems, he is not able to
17   properly make the assessments that he's tasked with doing under
18   the Executive Orders and the direction of his agency head.
19           THE COURT:  That's a pretty vague answer.  I
20   understand; you're in a tough spot.
21           Does Mr. Ramada need access to, for instance,
22   Social Security number, dates of birth, income?
23           MS. HALL:  Your Honor, my understanding is that he
24   does, and that's in part because part of his portfolio is
25   assessing the student loan system to ensure that student loans
```

1  abusive, or inconsistent with the leadership's policy
2  priorities.
3            Which SORN covers his identifying contracts and grants
4  that are inconsistent with the leadership's policy or
5  priorities?
6            MS. HALL:  Well, Your Honor, I think that the SORN
7  permitting disclosure for government researchers and policy
8  analysts would cover that, and in that capacity, you know, as
9  the plaintiffs noted in their argument, there is no allegation
10 that the DOGE employees involved disclosed anything to outside
11 governmental researchers and policy analysts, but as we've
12 discussed, this would apply to these individuals only if they
13 are in fact outside of the Education Department, which because
14 they're detailees, they are not.
15           But to the extent that we are looking at routine use
16 for that reason, I think Mr. Ramada is, in part, operating as a
17 policy analyst and a researcher to advise the leadership of the
18 Department of Education.
19           THE COURT:  Okay, all right.
20           Okay.  And for OPM, you cite one SORN.  It's the
21 General Personnel Records, I guess.  It covers only the system
22 with the name General Personnel Records.  So my question is, is
23 that the only SORN, and is that the only system that has been
24 accessed by the DOGE team at OPM?
25           MS. HALL:  Your Honor, I am not certain of the answer

```
 1   to that question.
 2              THE COURT:  So it had two parts; let me break it down.
 3              Is this the only SORN that you are citing to support
 4   your position that the disclosures to DOGE OPM is within the
 5   routine use exception?
 6              MS. HALL:  For purposes of this TRO, yes.
 7              THE COURT:  Okay, okay.
 8              The second question was, are the DOGE people at OPM
 9   accessing records that are not in the General Personnel Records?
10              MS. HALL:  Your Honor, I'm not certain whether -- so
11   the DOGE personnel, according to the Hogan declaration, I
12   believe, are accessing ...
13              THE COURT:  Let's look at the Hogan declaration.
14              MS. HALL:  Some of them are accessing EOPF and EHRI,
15   and it is my understanding that the SORN that we cited covers
16   those systems.
17              THE COURT:  What is that based on?  I don't see that
18   in the SORN; I see General Personnel Records.  Maybe the records
19   you just cited are a subset, but I don't know that.
20              MS. HALL:  That is my understanding, Your Honor, but
21   if you'd like for the government to submit a letter confirming
22   whether that is the case, we can do that.
23              THE COURT:  For instance, there's a system named
24   Employee Performance File System Records, there's a system named
25   Records of Adverse Actions, Performance-Based Reductions in
```

91

```
 1   Grades and Removal Actions, and Terminations of Probationers.
 2   Do the -- does the DOGE team have access to those two systems?
 3            MS. HALL:  Your Honor, my understanding is that the
 4   only way that the DOGE team -- and with OPM, I'd like to clarify
 5   that it is a little bit different, because as the Hogan
 6   declaration explains, OPM is in some capacity -- you know, the
 7   entire agency is really working on these DOGE EOs and
 8   implementing the President's directives, so I want to be very
 9   careful about distinguishing between individual -- I'm sure
10   there are individuals at OPM who have access to those records,
11   and I think in some capacity, everyone at OPM is involved in
12   implementing the President's Executive Orders.
13            So I can't make a representation that no one who is
14   doing anything on the Executive Orders has access to those
15   systems, but it's my understanding that the individuals the
16   plaintiffs seem to be objecting to have -- only a few of them
17   have access to EOPF and EHRI, and that's in paragraph 11 of the
18   Hogan declaration.
19            THE COURT:  Well, paragraph 11 just says that
20   Mr. Hogan removed access to those two systems with respect to
21   three engineers.
22            MS. HALL:  Your Honor, if I may direct your attention
23   to the first sentence of that paragraph, it says, "For systems
24   engineers who require access to sensitive systems, such as EOPF
25   and EHRI," so that -- that's where I'm getting the idea that we
```

```
 1   have engineers who require access to those systems and who have
 2   access to those systems.
 3            THE COURT:  Okay, all right.
 4            So one of the issues that the plaintiffs point out
 5   with this particular SORN is that the disclosure of the
 6   information with personal identifiers in the EHRI is for use in
 7   computer matching, and the statute defines computer matching,
 8   requires a computer matching agreement, shall not be effective
 9   until 30 days after it's made.
10            Is there a computer matching agreement?
11            MS. HALL:  Your Honor, I'm not aware of a computer
12   matching agreement with what would presumably be the USDS.  I
13   will -- Plaintiffs have suggested that a matching agreement
14   could not possibly be in place.  I will say that the
15   United States Digital Service, which is the office that
16   United States DOGE Service has renamed, did exist more than
17   30 days ago, but I am not aware of a computer matching agreement
18   with USDS.  And Plaintiffs have not identified what other agency
19   would need a computer matching agreement, again, because I think
20   these individuals are in fact employees of their home agencies.
21            Or -- I'm sorry, Your Honor; I'd like to correct what
22   I just said.  When I say "home agencies," I mean the agencies
23   that are named in the complaint.
24            THE COURT:  All right, okay.  Okay.
25            So let's talk about irreparable harm.  It's related to
```

```
 1            THE COURT:  All right.
 2            All right, just give me one moment.
 3            All right.  I want to thank the lawyers; you've done
 4   an excellent job in your written submissions and in your oral
 5   arguments today.  These are very important issues, very
 6   fascinating for a law nerd like me, and so thank you very much.
 7            I will rule as soon as I can.
 8            Okay, thank you.
 9            MS. HALL:  Thank you, Your Honor.
10            THE COURTROOM DEPUTY:  All rise.  This Honorable Court
11   now stands adjourned.  Thank you.
12       (The proceedings were adjourned at 1:34 p.m.)
13                         *     *     *
```

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2        I, Patricia Klepp, Registered Merit Reporter, in and for

 3   the United States District Court for the District of Maryland,

 4   do hereby certify, pursuant to 28 U.S.C. § 753, that the

 5   foregoing is a true and correct transcript of the

 6   stenographically-reported proceedings held in the above-entitled

 7   matter and the transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9                          Dated this 23rd day of February, 2025.

10

11
                         _____/s/_____
12                       PATRICIA KLEPP, RMR
                         Official Court Reporter
13
```