# Exhibit C

```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
                              SOUTHERN DIVISION

 AMERICAN FEDERATION OF TEACHERS,  )
 et al.,                           )
                                   )
         Plaintiffs                )
    vs.                            )
                                   )  CIVIL NO.:
 SCOTT BESSENT in his Official     )  8:25-cv-00430-DLB
 Capacity as Secretary of the      )
 Treasury, et al.,                 )
                                   )
         Defendants.               )
 _____)


                                         Greenbelt, Maryland
                                         February 26, 2025


                      TRANSCRIPT OF PROCEEDINGS
                          STATUS CONFERENCE
                BEFORE THE HONORABLE DEBORAH L. BOARDMAN
                          Via Teleconference


 For the Plaintiffs:

     XIAONAN APRIL HU, Esquire
     Munger, Tolles & Olson LLP
     601 Massachusetts Ave. NW, Suite 500E
     Washington, DC 20001

     JOHN L. SCHWAB, Esquire
     Munger, Tolles & Olson LLP
     355 S. Grand Avenue
     Los Angeles, CA 90071

     CARSON J. SCOTT, Esquire
     Munger, Tolles & Olson LLP
     560 Mission Street, 27th Floor
     San Francisco, CA 94105

     MARK HANNA, Esquire
     Murphy Anderson PLLC
     1401 K St NW, Suite 300
     Washington, DC 20005
```

```
 1                  A P P E A R A N C E S (Cont'd)

 2   For the Plaintiffs:

 3        LAURENCE M. SCHWARTZTOL, Esquire
          Democracy and Rule of Law Clinic
 4        Harvard Law School
          1525 Massachusetts Avenue
 5        Cambridge, MA 02138

 6


 7   For the Defendants:

 8        EMILY M. HALL, Esquire
          Civil Division, Office of the Assistant Attorney General
 9        950 Pennsylvania Ave. NW
          Washington, DC 20530
10
          ELIZABETH J. SHAPIRO, Esquire
11        Department of Justice, Civil Division
          1100 L St. N.W., Suite 8142
12        Washington, DC 20530

13        ARIANA W. ARNOLD, Esquire
          U.S. Attorney's Office - District of Maryland
14        36 S. Charles Street, 4th Floor
          Baltimore, MD 21201

15

16

17              Proceedings Recorded by Audio Recording
                 Transcript Produced By Stenographic
18                  Computer-Aided Transcription

19

20

21

22

23

24

25
```

P R O C E E D I N G S

(11:44 a.m.)

**THE CLERK:** The matter now pending before this Court is Civil Action Number DLB-25-0430, American Federation of Teachers, et al. versus Scott Bessent, et al. We are here today for the purpose of a status conference.

Counsel, please identify yourselves for the record.

**MS. HU:** Good morning, Your Honor. My name is Xiaonan April Hu on behalf of the plaintiff. I'm joined here today with John Schwab, Carson Scott, Laurence Schwartztol and Mark Hanna.

**THE COURT:** All right. Counsel for defendants.

**MS. HALL:** Good morning, Your Honor. This is Emily Hall at Department of Justice on behalf of defendants. I'm joined by Elizabeth Shapiro and Ariana Arnold, also both of the Department of Justice.

**THE COURT:** All right, counsel. Thank you very much for getting on the line. First off, I want to apologize sincerely on behalf of the court for the delay in getting started. We had some technical difficulties and I wanted to ensure that we have a public access line. It's my understanding that the public has been granted -- the public that has called into the public access line has been granted -- or is on the line. I just want to make sure if you are not a lawyer appearing in this case that your phone is on mute, but

1          **THE COURT:**  I can hear you.

2          **MS. HALL:**  Thank you, Your Honor.  Your Honor, I
3  think that this case is somewhat different in that we are
4  willing and able to produce an administrative record, as we
5  indicated in the joint status report, but we do believe this
6  case could be decided by Your Honor turning the TRO into a
7  preliminary injunction and entering that at this time based on
8  the current record.

9          **THE COURT:**  Oh, so we could -- so full stop, I could
10 just enter an order turning the TRO into a preliminary
11 injunction without additional briefing or hearing?  Is that
12 what I heard?

13         **MS. HALL:**  Yes, Your Honor.

14         **THE COURT:**  All right.  Ms. Hu, any opposition to
15 that?

16         **MS. HU:**  Yes, Your Honor.  I think plaintiffs would
17 oppose converting the TRO into a PI, in part because we
18 understand defendants' arguments have consistently been that
19 there is insufficient evidence to support a conclusion or
20 finding that plaintiffs have shown a likelihood of success on
21 the merits that there has been an agency action that violates
22 the Privacy Act; and so we are concerned that if the TRO gets
23 converted to a PI such that we are unable to obtain the
24 administrative record or any evidence, the Government will then
25 on appeal assert that there was insufficient evidence which

1   would, we think, really be unfair because we would have been
2   deprived the ability to access that evidence.
3          I would also, Your Honor, note that one important
4   distinction between our case and the SDNY case is the basis for
5   the Court's decision, so in the SDNY action, the Court
6   determined that the agency's decision to grant access or the
7   Treasury's decision to grant access was arbitrary and
8   capricious.  It did not address the merits of whether the
9   access fit into the need-to-know exception.  And so I do think
10  that puts us in a slightly different position, and the SDNY
11  court did order a limited production in the form of, I believe,
12  a joint status report to be delivered on March 24th.  So there
13  is going to be some amount of information that is tendered to
14  the court in that action.
15         Here, of course, because defendants have invoked the
16  need-to-know exception and have represented to us that there
17  will be an administrative record, we think the factual nature
18  of that inquiry would counsel in favor of obtaining that record
19  and then having an evidentiary hearing exception with the
20  preliminary injunction hearing.
21             **THE COURT:**  So, Ms. Hall, you touched on this issue
22  at the hearing last week and ultimately the Government said
23  that it would continue to argue before the Fourth Circuit if
24  you appeal that there was an insufficient evidentiary record,
25  and for that reason, you did not want to turn the TRO into a

1  PI. Has that position changed? In other words, if we convert
2  this into a preliminary injunction, will you maintain on appeal
3  that there's an insufficient evidentiary record for the
4  preliminary injunction?
5       **MS. HALL:** Your Honor, if the Court were to convert
6  the TRO into a PI, we would maintain, I think, several
7  arguments; one of which is that the plaintiffs have not shown
8  on the current record that they're entitled to a PI. As we
9  said in our submission to the Court the day of the hearing last
10 week, we are not willing to affirmatively waive arguments on
11 appeal at this time.
12      **THE COURT:** I understand that, but you've just asked
13 me to convert the TRO into a PI and in doing that, you are then
14 saying you don't want to produce documents, "We want you to
15 turn it into a PI, but yet we are going to argue to the Court
16 of Appeals that there was no factual record."
17     Or are you saying, "We won't be arguing the absence of a
18 factual record; we will be arguing" -- for example -- "Judge
19 Boardman, you made a mistake, there's no standing"? Or, "Judge
20 Boardman, you made a mistake, there's no final agency action"?
21     Will you be making legal arguments, or will you be
22 claiming that the plaintiffs failed to meet their burden with
23 respect to the factual record?
24      **MS. HALL:** Your Honor, my understanding is that on
25 appeal, we might make both types of argument. I think there

are arguments that we made in our TRO opposition that are purely legal arguments, but there may also be arguments that, for example -- as far as I know, there's been no discussion of plaintiffs providing more evidence or discovery from plaintiffs' perspective, and so in that respect we might argue that the plaintiffs have not produced evidence, for example, of irreparable harm.

**THE COURT:** Okay. Well, I don't think I can convert this to a PI based on the representations of the Government. I just don't think that would -- I think that would be wrong actually. I think that would be unfair to the plaintiffs, and I think that might be -- I think that would be a problem.

So let's proceed as the parties had proposed in their joint status report. So back to my question, Ms. Hall: Is there an administrative record to be produced? It looks like there is but I just want to know for sure.

**MS. HALL:** Yes, Your Honor. We are prepared to produce an administrative record in this case by next Friday, March 7.

**THE COURT:** Okay. From both agencies, right?

**MS. HALL:** Yes. Your Honor, we discussed yesterday in our meet and confer whether the Court anticipated the administrative record to involve Treasury and we anticipated that it might, but we were not certain what the scope of Your Honor's order was.

1    **THE COURT:** Right now the TRO is with respect to two
2    agencies but if there's a PI that's filed, it's possible it
3    could be filed against all three. So what's the
4    plaintiffs' position on this?
5    **MS. HU:** Your Honor, our position is that we would
6    file a PI seeking to enjoin all three agencies, in part,
7    because of the different nature of the SDNY action and the
8    basis on which that action was decided.
9    **THE COURT:** Okay. So you'll produce the
10   administrative record with respect to all three agencies by
11   next Friday. Is that right, Ms. Hall?
12   **MS. HALL:** That's right, Your Honor.
13   **THE COURT:** All right, okay. Now let's circle back
14   to where we started which is I've got available March 17 and
15   March 31st or thereafter. If we do March 31, we would need the
16   Government's consent to extend the TRO past the 28 days.
17   Ms. Hall, what is your position?
18   **MS. HALL:** Your Honor, we oppose extending the TRO
19   and we would be willing to prepare to hold the PI hearing on
20   March 17.
21   **THE COURT:** Okay. Are you willing to produce the
22   administrative records sooner than?
23   **MS. HALL:** Your Honor, in conferring with -- excuse
24   me?
25   **THE COURT:** That might be the consequence, which is

1 fine. Go ahead, your concern?

2 **MS. HALL:** Your Honor, producing an administrative
3 record in this case is going to be a substantial undertaking
4 particularly to prepare all of these documents and produce them
5 to the Court. In order to meet an earlier deadline, I'm not
6 sure that our clients will be able to do that.

7 **THE COURT:** Okay. I'm not at all trying to pressure
8 you into extending by a week, but I would just like to know
9 why.

10 **MS. HALL:** Your Honor, there are -- as you know,
11 there are three different agencies involved and it's several
12 agency actions, as you identified in your order, regarding
13 decisions to grant access to agency record systems. So
14 compiling those, all of the documents that the agency
15 considered in making those decisions when, as the Government
16 argued at the TRO, this is not -- we did not internally
17 consider this to be final agency action, although we recognize
18 that Your Honor found differently in her order.

19 Because of that, there are substantial efforts that need
20 to be made in order to just figure out exactly where the
21 relevant documents are in the system, then to compile those
22 into an administrative record, and to ensure that only
23 materials that can be properly included in that record are
24 included.

25 Your Honor, to the extent this may help, we certainly can

1   try, as we mentioned in the joint status report, to produce the
2   administrative record as quickly as possible, and we think it's
3   possible that we could move that timeline up by a day or two,
4   but we are trying to move as quickly as possible, and I'm not
5   in a position to commit to getting that done quicker.  But we
6   would be willing to consolidate the briefing schedule into
7   something faster to ensure that Your Honor's March 17th
8   availability would work.
9           **THE COURT:**  Okay.  I think perhaps I might have not
10  been clear in my question, but I appreciate that information on
11  how you're compiling the administrative record.
12      What my question was is I can't -- and I'm not --
13  pressuring you to consent to an additional week extension of
14  the TRO so we could have the hearing on the 31st of March.  You
15  told me you were unwilling to do that.  I'm asking you why.
16  Why can't we extend the TRO until March 31st?
17          **MS. HALL:**  Oh, I'm sorry, Your Honor.  I
18  misunderstood your question.
19          **THE COURT:**  I might have not asked it correctly.
20  We're on the same page now.
21          **MS. HALL:**  Got it, thank you, Your Honor.  We oppose
22  extending the TRO because the Government's interests are being
23  harmed during the duration and pendency of the TRO.  Our
24  employees who are subject to the TRO by its terms are unable to
25  complete the functions of their jobs as they can't access the

1   relevant systems and perform all of the tasks that they are
2   endeavoring to do under their detail assignments and particular
3   job responsibilities at the Education Department and OPM.
4            **THE COURT:** Okay.  So the Government does not consent
5   to an extension, certainly its prerogative.  Without consent, I
6   can't extend the time frame and that's fine.
7       So now let's talk about a schedule.  I think we need to
8   move the deadline for the motion... we could have the -- why
9   don't I do this.  Let me punt to you.  Ms. Hu, what do you
10  suggest?  What's a briefing schedule that you suggest?  And
11  I'll have you respond, Ms. Hall.
12      In order to prepare for this, I need this motion fully
13  ripe by the end of the day March 14th.
14           **MS. HU:**  Your Honor, I think we could -- looking at
15  the constraints here -- if defendants can produce the
16  administrative record by March 7 at 5:00 p.m., we could put in
17  a brief on, I believe, the 10th, and then they could have until
18  the 13th for their opposition, and then we would put in our
19  reply on the 14th by 5:00 p.m.
20      That being said, Your Honor, we do have serious concerns,
21  given the lack of information from defendants about what
22  exactly the administrative record will encompass, that the
23  schedule leaves us no time to resolve any disputes that arise
24  from any incomplete administrative record that is tendered to
25  us on the 7th.  We don't want to be in a position where

defendants come to us on the 7th, they've produced 20 sheets of paper, it doesn't answer basic questions similar to the ones that Your Honor proposed at the TRO hearing; and then we're left scrambling to request relief from the Court ordering the production of critical documents that would ensure there could be meaningful judicial review under the APA.

**THE COURT:** A couple things. Are you saying that the Government may not be able to produce the entire administrative record by March 7th? Or are you saying you might not be satisfied with the administrative record and try to seek additional discovery which, as you know, is a challenge for you. The bar is high to get discovery in a APA case. So which of those two are you saying?

**MS. HU:** I believe what we're saying here is the latter, Your Honor. I recognize the bar is high but we have also not received any clarity into what the administrative record will contain, including basic facts such as who the DOGE affiliates are, what kinds of systems they were granted access to, what their official duties are, what their responsibilities are, and what they have used their access for. So we view those -- of course, the exceptions to the rule against extra record evidence is if the record is incomplete or if it is impossible or difficult for the Court to render meaningful judicial review, and we think an administrative record that lacks documents that speak to those critical questions would be

1   manifestly incomplete and would not facilitate meaningful
2   judicial review under the circumstances.
3          **THE COURT:**  Okay.  Ms. Hall, do you care to be heard
4   on this particular issue?
5          **MS. HALL:**  Your Honor, I think on this point, we
6   would still favor the -- on the first point that Ms. Hu raised,
7   we would be fine with the schedule of briefing on the 10th, the
8   13th and 14th in order to have a March 17th hearing.  That
9   schedule is acceptable to the Government.
10     As to the discovery issue, plaintiffs could argue about
11  the incompleteness of the administrative record in their merits
12  section of the preliminary injunction brief.  If they think
13  that the record that we have provided to sustain the agency's
14  decision is insufficient, that's the core of APA review.  So if
15  they believe that we have provided an insufficient basis for
16  the agency action, that would be a reason to grant the
17  preliminary injunction and enjoin the agency action.
18         **THE COURT:**  Ms. Hu.
19         **MS. HU:**  Your Honor, I think our concern here is that
20  we understand defendant's position to be they will assemble an
21  administrative record ex post facto where they get to decide
22  effectively what they want to give us.  But courts have been
23  clear that an agency "may not unilaterally determine what
24  constitutes the administrative record."  I can certainly
25  provide the Court with citations for that.

1   But we are concerned here that the compressed schedule
2   means effectively whatever they give us is whatever they
3   unilaterally determine to give us and we will have no ability
4   to challenge that determination which would be contra the rules
5   and standards for APA actions requiring a record that can
6   ensure meaningful judicial review here.
7           **THE COURT:** Okay.  We're going to go with the
8   briefing schedule that you proposed.  So the administrative
9   record will be produced by the Government to the plaintiffs by
10  March 7 at 5:00 p.m.; preliminary injunction motion will be due
11  by March 10 at 5:00 p.m.; Government's opposition March 13th at
12  5:00 p.m.; and any reply by March 14th at 5:00 p.m.
13          If upon production of the administrative record, the
14  plaintiffs believe that they are entitled under the law to
15  additional information, they need to notify the Court by
16  midnight Saturday, March 8th.  The Government needs to respond
17  by midnight, Sunday, March 9th, and I will do my very best to
18  address it on -- I'll give myself about 48 hours to deal with
19  it.
20          The plaintiffs' motion is still due.  They can supplement
21  their position in the reply brief if any additional discovery
22  is produced.  So that's where we're at.
23          **MS. HU:** Understood, Your Honor.  Thank you.
24          **MS. HALL:** Thank you, Your Honor.
25          **THE COURT:** All right.  Are the deadlines clear?  In

1   other words, March 8th is a Saturday.  Midnight that night,
2   Saturday night it's due.  Government then will get 24 hours so
3   that I can review these papers first thing Monday morning.  All
4   right?
5           **MS. HALL:**  Yes, Your Honor.
6           **THE COURT:**  Okay.
7           **MS. HU:**  Yes, Your Honor.
8           **THE COURT:**  The time on the 17th...  Let's start it
9   at 10:30, same courtroom.  I'll give you extra bonus points if
10  anybody shows up with a green suit.  All right, these jokes are
11  falling flat.
12      Is there anything else from the plaintiffs' perspective?
13          **MS. HU:**  Your Honor, may I ask a quick clarifying
14  question for the hearing on the 17th?  Does Your Honor
15  anticipate that we may be able to present or call witnesses at
16  this hearing?  In other words, will it be an evidentiary
17  hearing, or is the Court reserving a decision on that pending
18  the production of the administrative record?
19          **THE COURT:**  So it's your burden.  If you believe that
20  you need evidence, you should identify that ahead of time
21  and allow the Government to respond as to whether that's
22  appropriate.  I think that should come out in the briefing.
23          **MS. HU:**  To clarify, Your Honor, would that be the
24  briefing that would be filed on the 8th before midnight?  So
25  any request for additional discovery plaintiffs believe they're

1      **MS. HU:**  Thank you, Your Honor.

2      (Proceedings concluded at 12:08 p.m.)

5                CERTIFICATE OF OFFICIAL REPORTER

7      I, Patricia G. Mitchell, RMR, CRR, do hereby certify
8   that the foregoing is a correct transcript of the
9   audio-recorded proceedings in the above-entitled matter, audio
10  recorded via FTR Gold on February 26, 2025, and transcribed
11  from the audio recording to the best of my ability and that
12  said transcript has been compared with the audio recording.

       Dated this 3rd day of March 2024.

                    *Patricia G. Mitchell*
       _____
                     Patricia G. Mitchell
                     Official Court Reporter