# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| AMERICAN FEDERATION OF TEACHERS, et al., | |
| Plaintiffs, | |
| v. | Case No. 8:25-cv-430-DLB |
| SCOTT BESSENT, et al., | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXTRA-RECORD DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.      The Parties Agree That the Court May Rule on Plaintiffs' Request to Convert the
Temporary Restraining Order to a Preliminary Injunction Without Further Factual
Development. ........................................................................................................... 3

II.     Extra-Record Discovery Is Not Necessary and Would Not Be Appropriate. ..................... 4

      A.      The Court Should Follow the Ordinary Rule of Record Review
in this APA Case. ........................................................................................ 4

      B.      Defendants Have Acted in Good Faith, and Plaintiffs' Contrary
Assertion Is Baseless .............................................................................. 10

      C.      Plaintiffs' Request for Expedited Discovery Is Unjustified and Violates
Procedureal Norms ................................................................................. 13

III.    Plaintiffs Offer No Persuasive Reason to Conduct Separate Proceedings for
Treasury. ............................................................................................................... 15

CONCLUSION ................................................................................................................. 16

## INTRODUCTION

Plaintiffs now concede that discovery is unnecessary for the Court to rule on Plaintiffs' forthcoming motion for preliminary injunction on the facts and record already before it. *See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Extra-Record Discovery 1-2, 16 & n.6, ECF No. 53-1 ("Pls.' Mem.")  Yet, Plaintiffs baselessly insist that the Court should convert the temporary restraining order to a preliminary injunction but *still* expedite discovery—even though this is an Administrative Procedure Act case subject to the general rule requiring record review, *not* discovery—and even though the time for Defendants to respond to Plaintiffs' Amended Complaint and raise dispositive threshold arguments has not yet run.  The Court should reject Plaintiffs' wholly unorthodox plan for further litigation of this case, which is contrary to basic principles of administrative law and the Federal Rules of Civil Procedure.  If the Court concludes—now with the benefit of the agencies' administrative records—that Plaintiffs have satisfied the requirements for a preliminary injunction, then Plaintiffs will have obtained all appropriate relief, and this litigation should proceed in the ordinary course, without expedited discovery. And if the Court concludes—as Defendants believe it should—that preliminary relief is inappropriate, then this case should also proceed in the ordinary course.

## BACKGROUND

Plaintiffs are several labor organizations, a nonprofit organization, and six individuals. Am. Compl ¶¶ 19-27 (ECF No. 13). Defendants are three federal government agencies—the Department of the Treasury, the Office of Personnel Management, and the Department of Education—and the head (or acting head) of each agency. *Id.* ¶¶ 28-33.  Plaintiffs filed an amended complaint on February 12, 2025. *Id.*  The Complaint states three causes of action.  In Count One, Plaintiffs allege that Treasury, OPM, and Education have violated the Privacy Act of 1974 by

"disclos[ing]" Plaintiffs' personal data in violation of 5 U.S.C. § 552a(b), and that those disclosures must therefore be "set aside" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Am. Compl. ¶¶ 145-51.  In Count Two, Plaintiffs allege that Defendants' conduct is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law under the APA, 5 U.S.C. § 706(2)(A), because they have "failed to consider the consent requirements of the Privacy Act," "their duty to protect the sensitive data on their systems," "the risks that their disclosures would result in corrupted data," and "the security threats that are likely to result from their action." Am. Compl. ¶¶ 152-156; *see* 5 U.S.C. §§ 552a(b), 552a(e)(1).  And in Count Three, Plaintiffs allege that Defendants acted "in excess of statutory authority" under the APA, 5 U.S.C. § 706(2)(C), by violating their "non-discretionary duty to protect records on individuals from unauthorized disclosure." Am. Compl. ¶¶ 157-59.

Plaintiffs filed a motion for temporary restraining order on February 12. Mot. (ECF No. 14); TRO Mem. (ECF 14-1).  On February 24, the Court granted that motion in part, enjoining the Department of Education and OPM from disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to "any DOGE affiliates," until March 10, 2025 at 8:00 a.m.  Mem. Op. & TRO 32-33, ECF No. 38 ("Mem. Op. & TRO").  The Court denied Plaintiffs' motion as to the Treasury Department.  *Id.*  The Court further ordered the parties to meet and confer to discuss a schedule for production of the administrative record, any request for limited discovery, and a briefing schedule for a preliminary injunction motion.  The parties submitted their proposals in a Joint Status Report on February 25, 2025.  ECF No. 44.

Following a status conference held on February 26, the Court ordered Defendants to produce the administrative records by 5 p.m. on March 7 and for Plaintiffs to notify the Court by midnight on March 8 if Plaintiffs seek limited discovery.  ECF No. 46.  The Court also entered a

schedule for briefing on Plaintiffs' forthcoming motion for preliminary injunction and set a hearing

on that motion for 10:30 a.m. on March 17. *Id.* Further, on March 6, the Court extended the

temporary restraining order until March 17 at 5 p.m. ECF No. 50.

      Defendants have produced the administrative records for all three agencies, ECF No. 51,

and Plaintiffs have moved for extra-record discovery, ECF No. 53.

## ARGUMENT

### I.  The Parties Agree That the Court May Rule on Plaintiffs' Request to Convert the Temporary Restraining Order to a Preliminary Injunction Without Further Factual Development.

      Plaintiffs previously stated a desire to take discovery before the expiration of the temporary

restraining order entered on February 24, 2025, and to call up to five live witnesses at the hearing

on Plaintiffs' forthcoming preliminary injunction motion. Joint Status Report 2-3, ECF No. 44.

Plaintiffs have changed course, however, and now take the position that the Court should convert

the temporary restraining order to a preliminary injunction without further factual development.

Mem. at 1-2, 14-15. Although Defendants dispute that either a temporary restraining order or a

preliminary injunction is appropriate for the reasons stated in their opposition to Plaintiffs' motion

for a temporary restraining order, Defendants agree that the Court can, and should, decide whether

to enter a preliminary injunction based on the facts and record already before it.

      As discussed below, and as the Court has recognized, review in an APA case is typically

limited to the administrative record. *See* Feb. 26, 2025 Hrg. Tr. 13:12. If the Court were to

conclude that the administrative record does not support the challenged decisions, then the

appropriate course would be to grant Plaintiffs' request for a preliminary injunction rather than

permit discovery. *See infra*. On the compressed schedule for emergency proceedings, it would be

impractical for Plaintiffs to serve discovery, for Defendants to respond to those requests, and for

Defendants to meaningfully prepare any live witnesses all before the hearing scheduled for March

17, as Plaintiffs now appear to acknowledge. The Court now has before it everything it needs to issue a ruling on Plaintiffs' request for a preliminary injunction.

## II.    Extra-Record Discovery Is Not Necessary and Would Not Be Appropriate.

### A.    The Court Should Follow the Ordinary Rule of Record Review in this APA Case.

In claims brought under the APA, there is a strong presumption that discovery is not permitted; claims seeking review of an agency action under the APA "are adjudicated without a trial or discovery, on the basis of an existing administrative record." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007) (reviewing final agency determination under APA usually "does not require fact finding" and is "limited to the administrative record"). "[T]he focal point for judicial review" under the APA should be "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other grounds*, *Califano v. Saunders*, 430 U.S. 99 (1977); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Further, the reviewing court must not substitute its judgment for that of the agency decision maker but, instead, should determine whether the agency decision, based on the record before the decision maker, was arbitrary and capricious or contrary to law. *See Overton Park*, 401 U.S. at 416; *see also Florida Power & Light*, 470 U.S. at 744.

The Court already appropriately recognized that "[t]he bar is high to get discovery in an APA case." Feb. 26, 2025 Hrg. Tr. 13:12. Plaintiffs have not met that high bar. First, Plaintiffs complain repeatedly about the number of pages contained in Defendants' administrative record, which—in their view—is evidence the administrative records are "plainly inadequate." Pls.' Mem. at 15. The sufficiency of an administrative record, however, is not a matter of page counting. The

question for the Court is whether the agency has shown a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, the administrative records contain the extant materials that informed or reflect each agency's decisionmaking as to systems access for DOGE affiliates, and those materials provide sufficient information for the Court to evaluate Defendants' decisions. OPM's administrative record includes the relevant communication directing that particular employees performing DOGE-related work be given access to specific systems, which, together with the President's Executive Order directing agencies to provide access, explains the basis for OPM's decision. *See* OPM-000023-29, ECF No. 51-1. OPM's record, moreover, shows that the agency audited the need for access to systems and removed employees' access when such access to a particular system was no longer needed. OPM-000023, OPM-000030-52. The Department of Education's administrative record, moreover, contains a memorandum explicitly stating its justification for granting access to its DOGE team members and their "need to know" based on Executive Order 14,158. *See* ECF No. 51-3 at 33. And finally, the Treasury Department has provided the engagement plan and accompanying work plan describing the reasons for providing Treasury employees who were members of the Treasury DOGE team access—to understand payment processes and opportunities to advance payment integrity and fraud—and communications reflecting the decisions regarding the level of access approved for one Treasury DOGE team member, which show the mitigation and controls that the Department adopted to address potential risks surrounding access. *See* 25-cv-00430_DMD_UST_0057-62, ECF No. 51-2.

Plaintiffs flyspeck each agency's administrative record, but it should not have come as a surprise to Plaintiffs that the administrative records in these cases do not contain volumes of

information.  Although the Court reached a different conclusion in its decision granting in part Plaintiffs' motion for a temporary restraining order, Defendants maintain that the decision to grant agency employees access to internal agency databases is not a final agency action.  *See* Defs.' Opp'n to Pls.' Mot. for TRO 16-18, ECF No. 27.  For that reason, unlike in a rulemaking, for example, the agencies did not create a voluminous "record" underlying their decisions—and they were under no obligation to do so.  Rather, approval of access to agency systems and data are the type of mine-run activites that often occur without extensive documentation.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004).  To comply with the Court's order to produce the administrative records, Defendants have identified and produced all non-deliberative materials that informed the agencies' decisions, which—taken with the President's Executive Order instructing agencies to allow DOGE Team members access "to the maximum extent consistent with law"— explain the basis for granting access to the relevant "DOGE-affiliates."  Nothing more is required in this case.

Nor is it inappropriate or surprising that Defendants included in the administrative records documents that post-date the decisions to grant access, as Plaintiffs seem to suggest.  *See* Pls.' Mem. at 14.  Indeed, Plaintiffs' arguments to that effect are contradictory, given that Plaintiffs themselves asked that the administrative records include post-access information—and they continue to insist on obtaining more such information through discovery.  *See* Joint Status Report at 2; Pls.' Mem. at 17 (requesting discovery regarding "[e]ach DOGE affiliates' use and dissemination of the records contained within Defendants' systems of records, including in connection with AI tools or software").  Moreover, agency records post-dating Plaintiffs' complaint—*e.g.* OPM "Account Creation Audit" Excel file (Pls.' Mem. at 8)—were included in the administrative record to facilitate effective judicial review.  Indeed, Plaintiffs note that those

materials show which "DOGE affiliates" were granted access to certain systems on various dates. *Id.* Plaintiffs' assertions that materials were included in the administrative record to "manufacture a post-hoc paper trail" are spurious. *Id.* at 6-7. Similarly, the referenced Department of Education memorandum explains the "need to know" of agency employees provided access to systems— facilitating for effective judicial review by the Court as to whether Plaintiffs should be entitled to *prospective* injunctive relief.

In any event, Plaintiffs' complaints about the administrative records do not support their insistence on discovery. The Court's task on the merits is to look at the administrative records produced and to determine whether the challenged decisions were rational and lawful. Based primarily on the administrative records' page count, Plaintiffs clearly have concerns with the adequacy of Defendants' justifications for their decisions. But the appropriate course is for Plaintiffs to make their argument that Defendants' justifications found in the administrative record are insufficient; it is not to abandon the general rule in APA cases that review should be based on the agency's record. *See Florida Power & Light Co.*, 470 U.S. at 744 (explaining that, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course," the appropriate course, "except in rare circumstances, is to remand to the agency for additional investigation or explanation); *Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 347 (D.C. Cir. 1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."); *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) ("If the agency action, once explained by the proper agency official, is not sustainable on the record itself,

the proper judicial approach has been to vacate the action and to remand the matter back to the agency for further consideration.").

Plaintiffs insist that it is "unfair" to deny them discovery. Pls.' Mem. at 15. Not so. If the Court were to enter a preliminary injunction for OPM and the Department of Education, as Plaintiffs now request, then they would obtain all the relief they sought as to those agencies while this case proceeds or during the pendency of any interlocutory appeal. Moreover, Defendants have now produced the administrative records in this case and, given Defendants' representations that the lawfulness and reasonableness of the agencies' decisions should be evaluated based on those records—win or lose—there is no plausible prejudice to Plaintiffs. Plaintiffs may argue going forward that the agencies' administrative records are deficient, as they do at length in their motion for extra-record discovery. Defendants believe that Plaintiffs are not entitled to injunctive relief for the reasons stated in their opposition to Plaintiffs' motion for a temporary restraining order. But if the Court disagrees or believes that the administrative records produced do not support Defendants' actions, then the Court may grant Plaintiffs' request for a preliminary injunction.

Although Plaintiffs repeatedly accuse Defendants of "gamesmanship" and of "running out the clock," it is Plaintiffs who have sought to abuse the Court process by insisting on the need for discovery while evading appellate review. Yet, now that Plaintiffs concede the Court may rule on Plaintiffs' motion for a preliminary injunction without further factual development, Plaintiffs' proposed expedited discovery would serve no purpose except to satisfy Plaintiffs' prurient interests. Either the Court needs further factual development to address the merits of Plaintiffs' claims or, as Defendants (and even *Plaintiffs*) believe, it does not—but Plaintiffs cannot have it both ways.

Plaintiffs also point to a recent order in the U.S. District Court for the District of Columbia where the court allowed discovery to proceed in another challenge to data access to individuals implementing Executive Order 14,158.  *See* Pls.' Mem. at 11-12 (citing Order, *AFL-CIO v. U.S. Dep't of Labor*, No. 1:25-cv-00339 (D.D.C. Feb. 27, 2025), ECF No. 48) ("*AFL* Order").  But the facts and procedural posture of this case are materially different from that one, and, in any event, the government respectfully submits that *AFL* Order was wrongfully decided.[1]

First, the *AFL* Order did not address whether it was proper to proceed with expedited discovery prior to ruling on the defendants' threshold arguments in their motion to dismiss.  *AFL* Order; *but see In re United States*, 583 U.S. 29, 32 (2017) (directing district court to first rule on government's threshold arguments before it orders supplementation of the administrative record). Second, the *AFL* court appears to have fashioned an entirely novel exception to the administrative record review rule—one resting on the court's assertion that the case before it is "not an ordinary APA case."  *AFL* Order. at 5; *see also id.* at 7 ("[T]his case merits an exception to the general prohibition of discovery in APA cases.").  Third, the court failed to provide an opportunity for the agency to first compile and produce the administrative record, and then determine if any "gaps" in that record existed.  *See id.* at 6.  Instead, the court surmised that it was not "evident that there exists a standard administrative record that defendants could submit," *id.* at 6, and further concluded—without the benefit of the administrative record—that there was a need for "filling in gaps . . . to determine what the agency actually did," *id.* (internal quotation marks and citation omitted).

---

[1] It should nevertheless be noted that *AFL* court observed that "[w]hether to grant the motion [for expedited discovery]" was "a close question," Order Granting in Part and Denying in Part Motion for Expedited Discovery at 1, *AFL-CIO v. Dep't of Labor*, 1:25-cv-339 (D.D.C. Feb. 27, 2025), and the court's ruling limited the plaintiffs' discovery requests, *id.* at 12, 14.

This Court too has yet to definitively resolve threshold defenses. In contrast with *AFL*, here there *is* an administrative record, thus making clear that the remedy is not discovery. To the extent the Court believes the administrative record contains gaps that would not allow for effective judicial review, the standard procedure in an APA case is to remand to the agency for additional explanation. *See, e.g.*, *Fla. Power & Light*, 470 U.S. at 744. And, unlike here, in *AFL*, the court had not entered injunctive relief against the Defendants—allowing for more time for discovery while not binding the defendants. In this case, to the extent the Court does convert the temporary restraining order to a preliminary injunction, Plaintiffs will already have the relief they seek while the case proceeds to a motion to dismiss or during the pendency of any appeal.

### B.    Defendants Have Acted in Good Faith, and Plaintiffs' Contrary Assertion Is Baseless.

Plaintiffs accuse the government of having acted in "bad faith," thus, they claim, entitling them to discovery. Pls.' Mem. at 12-14. This argument fails. "In the context of judicial review of agency action under the APA, courts have allowed discovery where there has been a 'strong showing of bad faith or improper behavior.'" *Tafas v. Dudas*, 530 F. Supp 2d 786, 797 (E.D. Va. 2008) (quoting *Cmty. For Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990)). "Courts have imposed a high standard on plaintiffs seeking to demonstrate bad faith." *Id.* "[M]ere allegations of 'bad faith' are inadequate." *Id.* The standard is not satisfied by disagreement with the agency, but by something akin to a "showing of fraud or clear wrongdoing," *Mullins v. U.S. Dep't of Energy*, 50 F.3d 990, 993 (Fed. Cir. 1995), or where an agency employee filed fraudulent documents and "perjured himself repeatedly," *United States v. Shafer*, 11 F.3d 450, 460-61 (4th Cir. 1993).

Plaintiffs have shown nothing along these lines. Plaintiffs' serious allegations—that Treasury deliberately omitted negative material from its record and acted in bad faith—does not

stand up under review.  Pls.' Mem. at 13.  Plaintiffs point to news reports regarding the personal opinions of a subcontractor, but Plaintiffs provide nothing to suggest that any such document was, in fact, considered by Treasury in granting access—and therefore Plaintiffs offer no legitimate reason to question that the certified administrative record is complete.  Plaintiffs also note, based on Mr. Gioeli's declaration, that Treasury recognized that providing access to its Bureau of the Fiscal service systems presented risk.  But communications related to that concern were not excluded: Treasury's record includes a document reflecting the mitigation and controls approved based on such risks.  The absence of other documents on that topic is not—as Plaintiffs assert—to hide "unfavorable information."  *Id.* Material is properly excluded when it consists of predecisional, internal deliberations about different potential options for the agency to adopt.  Privileged materials, such as those communications, "are not part of the administrative record to begin with," and therefore such materials do not need to be included, or even logged.  *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *Tafas*, 530 F. Supp. 2d at 794.  Their exclusion does not give any indication of bad faith, much less a "strong showing" of bad faith—it is basic administrative record practice.  And in any event, the government is not trying to hide this information—indeed, it has acknowledged in this litigation that access presented risks, as Plaintiffs recognize.  *See* Pls.' Mem. at 13.

Plaintiffs' other complaints similarly fail.  They contend that "Defendants' pretextual decision-making also suggests bad faith."  Pls.' Mem. at 13.  But their complaints here are not that the record or other evidence indicates a *different* basis for the decision than the one claimed (*i.e.*, pretext), but rather that the record does not—in their view—adequately support the government's claimed rationale.  *Id.* at 14.  This is simply a claim that the record is inadequate by another gloss; not a basis for bad faith, much less extra record discovery.

Finally, Plaintiffs state that Defendants are attempting to construe a "post hoc" explanation. *Id.* Yet, Plaintiffs ignore the fact that there was no final agency action—certainly the agencies did not consider their actions to be such—and thus it is of no surprise that this administrative record differs from situations challenging final agency action. And to the extent they complain that the record included materials from February 12, they themselves urged the records to contain post-decision information. Furthermore, the post-complaint materials that explain the agencies' rationales facilitate the Court's determination whether *prospective* injunctive relief is necessary. If the Court agrees with Defendants that the agencies' employees' have the requisite "need to know," in accordance with the Privacy Act, then preliminary injunctive relief barring those employees from accessing agency record systems would be inappropriate. Ultimately, mere speculations about concerns with the record do not overcome the presumption of regularity associated with the certification of a record—much less the "strong showing" of bad faith justifying discovery. *See Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 371 (D.D.C. 2007) ("showing a theoretical possibility that other documents not in the record exist" was not enough to overcome presumption that agency properly designated the record).

## C. Plaintiffs' Request for Expedited Discovery Is Not Justified and Violates Procedural Norms.

Now that Plaintiffs ask the Court to convert the temporary restraining order to a preliminary injunction, there is no sensible reason why discovery should proceed immediately, before Defendants have had the opportunity to respond to Plaintiffs' Amended Complaint. And—at least as to OPM and the Department of Education—Plaintiffs do not even attempt to provide one.

If the Court were to enter a preliminary injunction, that injunction would address the alleged harm on which Plaintiffs based their request for emergency relief. In that case, the government may ask the Court to stay its ruling to permit an appeal to the Fourth Circuit, and, if

so, the Court would decide whether a stay is warranted.  Either way, after the conclusion of emergency proceedings, the case could proceed in an orderly manner governed by the Federal Rules of Civil Procedure, which provide that, absent unusual circumstances not present here, discovery should not proceed before the parties have conferred as required by Federal Rule of Civil Procedure 26(f).  Rule 26 provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  The Local Rules of this Court, moreover, state that, "[u]nless otherwise ordered by the Court or agreed upon by the parties, the conference of counsel required by Fed. R. Civ. P. 26(f) need not take place and discovery shall not commence . . . until a scheduling order is entered."  L.R. 104.4.

Although the Court has broad discretion with respect to the scheduling of discovery in typical litigation under Rule 26(d), Plaintiffs cannot demonstrate that expedited discovery is reasonable in this APA matter.  As this Court has noted, "[t]he bar is high to get discovery in an APA case," Feb. 26, 2025 Hrg. Tr. 13:12, but *even if* that were not the case, Plaintiffs still have not met their burden to justify expedited discovery.  When considering a request for expedited discovery, courts look to the "totality of the circumstances," including: (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested expedited discovery; (3) the reasons the moving party is requesting expedited discovery; (4) the burden on the opponent to comply with the request for expedited discovery; (5) whether the information sought expeditiously could be obtained more efficiently from some other source; (6) the extent to which the discovery process would be expedited; and (7) whether a motion to dismiss for failure to state a claim is

pending. *Courthouse News Service v. Harris*, No. 22-cv-00548-ELH, 2022 WL 3577255 (D. Md. Aug. 18, 2022).

Plaintiffs have now disclaimed their prior-asserted need for discovery for the Court to address their motion for a preliminary injunction as to OPM and the Department of Education. Because the parties agree that further factual development is unnecessary for the Court to rule on Plaintiffs' request for preliminary injunctive relief, the first factor weighs against expedited discovery. Indeed, Plaintiffs contemplate that the Court should rule on their request for a preliminary injunction before discovery even begins. The final factor, moreover, also weighs strongly against expedited discovery. This case so far has played out on an extremely condensed schedule to address Plaintiffs' request for emergency relief. But the time for Defendants to respond to the Amended Complaint has not yet run, *see* Fed. R. Civ. P. 12(a)(2), and Defendants intend to move to dismiss Plaintiffs' claims in their entirety. *See Guttenberg v. Emory*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014) (explaining that the "most important" consideration in the Court's reasonableness analysis was "the pendency of defendants' motion to dismiss"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.").

Other than whether discovery is equally available from another source, the remaining factors are either neutral or weigh in favor of denying Plaintiffs' motion. Plaintiffs seek a short discovery period of only three months. And, as to Plaintiffs' purpose in seeking discovery, clearly it is not to inform a decision on injunctive relief, as Plaintiffs now concede that the Court may convert the temporary restraining order to a preliminary injunction on the information the Court already has before it. To the extent discovery is ever appropriate in this case—and Defendants

maintain that it is not—Plaintiffs cannot explain why it requires expediting, beyond some vague notion of injustice that they have not obtained discovery already in the case they elected to pursue under the APA.

Rather than explain why expedited discovery is necessary given Plaintiffs' request to convert the exiting temporary restraining order to a preliminary injunction, Plaintiffs seem to suggest that expedited discovery should be imposed as some sort of punishment for what Plaintiffs call "gamesmanship." Pls.' Mem. at 15. Defendants have engaged in no such behavior. Defendants filed the certified administrative records for the three agencies by the deadline agreed to by the parties and ordered by the Court. *See* ECF No. 44; ECF No. 46. Although Plaintiffs believe that the administrative records are lacking, they may point to any perceived deficiencies in the administrative records when arguing the merits. In any event, imposing expedited discovery in order to avoid "reward[ing]" Defendants for Plaintiffs' changed litigation position, Pls.' Mem. at 15, is not a proper reason to adopt Plaintiffs' proposed path forward.

## III.    Plaintiffs Offer No Persuasive Reason to Conduct Separate Proceedings for Treasury.

Plaintiffs propose a separate and unnecessarily complicated procedure for the Court to consider their request for a preliminary injunction against the Treasury Department. Yet, they provide no good reason to effectively break their claims against Treasury off from the rest of the case, and the Court should reject Plaintiffs' proposal.

In its February 24, 2025 Memorandum Opinion, the Court denied Plaintiffs' request for a temporary restraining order against Treasury because the preliminary injunction entered in *New York v. Trump*, 1:25-cv-01144 (S.D.N.Y.), applies to Treasury records containing Plaintiffs' personally identifiable information. *See* Mem. Op. 2. Thus, as the Court concluded, "the plaintiffs cannot establish that they will be irreparably harmed if this Court does not grant a TRO against Treasury." *Id.* The preliminary injunction entered in the United States District Court for the

Southern District of New York remains in effect.  And, accordingly, the same reasoning underlying the Court's denial of Plaintiffs' motion as to Treasury still applies.  *See Maages Auditorium v. Prince George's County*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014) ("The standard for a temporary restraining order is the same as a preliminary injunction."), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). Having failed to meet the requirements for emergency injunctive relief, their claims against Treasury should proceed in the normal course, including first allowing Treasury an opportunity to move to dismiss before litigation against the agency proceeds further.

Discovery would still be wholly unnecessary for the Court to resolve Plaintiffs' APA claims, which, again, should be decided based on Treasury's administrative record.  Particularly now that Plaintiffs ask that preliminary injunctive relief against OPM and the Department of Education be granted without discovery, Plaintiffs' insistence on discovery for their claims only against Treasury is passing strange.  Treasury, like OPM and the Department of Education, has also produced its administrative record, and the Court's review should be limited to that record for the reasons discussed above.  Thus, even if the Court were to conclude that the effect of the injunction in the Southern District of New York is different as to Plaintiffs' request for a preliminary injunction, the Court may still rule on Plaintiffs' forthcoming preliminary injunction motion based on the materials and record already before the Court.  No legitimate purpose would be served by sidestepping the normal rule of record review; it would serve only to indulge Plaintiffs' apparent desire to conduct discovery for its own sake.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for extra-record discovery, and the Court may rule on Plaintiffs' forthcoming motion for preliminary injunction based on the administrative records produced in this action.

Dated:  March 9, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General
                                         Civil Division, Federal Programs Branch

                                         ELIZABETH J. SHAPIRO
                                         Deputy Branch Director
                                         Civil Division, Federal Programs Branch
                                         United States Department of Justice
                                         1100 L Street, N.W.
                                         Washington, D.C. 20005
                                         Tel: (202) 514-2705
                                         Fax: (202) 616-8470
                                         Elizabeth.Shapiro@usdoj.gov

                                         EMILY HALL
                                         Counsel to the Assistant Attorney General
                                         Civil Division
                                         United States Department of Justice
                                         950 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20530
                                         Tel: (202) 307-6482
                                         Emily.Hall@usdoj.gov

                                         */s/ Bradley P. Humphreys*
                                         BRADLEY P. HUMPHREYS
                                         Senior Trial Counsel
                                         Civil Division, Federal Programs Branch
                                         United States Department of Justice
                                         1100 L Street NW
                                         Washington, DC 20005
                                         Telephone: (202) 305-0878
                                         Bradley.Humphreys@usdoj.gov

                                         Kelly O. Hayes
                                         Interim U.S. Attorney

ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
Tel: (410) 209-4813
Fax: (410) 962-2310
Ariana.Arnold@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 9, 2025, I electronically filed the foregoing and the accompanying

attachments, and thereby caused a copy to be served on counsel of record.

 */s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS