# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE TREASURY, *et al.*,<br><br>Defendants. | Civil Action No. 25-1144 (JAV) |

### DECLARATION OF MICHAEL J. WENZLER

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

I, Michael J. Wenzler, declare the following to be a true and correct statement of facts:

1. I am the Associate Chief Human Capital Officer for Executive and Human Capital Services at the Departmental Offices of the Department of the Treasury (Treasury). In this capacity, I am responsible for leading and overseeing the development and delivery of the full range of human resources services to managers, supervisors, and employees of Treasury's Departmental Offices. This includes, but is not limited to, appointing, onboarding, and providing executive resources support to Departmental Offices senior executives, senior level executives, non-career executives, Schedule C appointees, and Presidential appointees. I have held this position since January 28, 2024. Prior to this role, I served at the U.S. Mint, and I have been employed at the Treasury Department since April 2020.

2. I provide this declaration in support of the Defendants' Motion to Partially Dissolve the Preliminary Injunction. The purpose of this declaration is to (i) set forth the legal authority

1

pursuant to which each former and current member of the team of the Department of Governmental Efficiency (DOGE) at Treasury (Treasury DOGE Team) was or is employed by, or detailed to, Treasury and (ii) provide information about trainings that are required of employees of Treasury's Departmental Offices and trainings that have been, or will be, completed by Treasury DOGE Team members. I understand that additional information specific to BFS Trainings is provided in the accompanying declaration of Joseph Gioeli. The statements made herein are based on my personal knowledge and review of documents and information furnished to me in the course of my official duties.

3. On January 23, 2025, Thomas H. Krause, Jr., was appointed under 5 U.S.C. § 3109 as a Consultant for Treasury (Departmental Offices, Office of the Chief of Staff) with the title of Senior Advisor for Technology and Modernization. Thomas executed his appointment affidavit and affirmed his oath of office on January 23, 2025, and onboarded at Treasury the same day. The relevant statute underlying Mr. Krause's § 3109 appointment authority was 31 U.S.C. § 332(1), which provides that the Treasury Secretary "may to the extent provided in advance by appropriation acts . . . contract for the temporary or intermittent services of experts or consultants as authorized by" Section 3109. The relevant appropriation is section 113 of Division B of Pub. L. No. 118-47 ("Appropriations to the Department of the Treasury in this Act shall be available for . . . services authorized by 5 U.S.C. § 3109"). Consultants appointed under 5 U.S.C. § 3109 are Federal civil service employees under 5 U.S.C. § 2105. *See* 5 C.F.R. § 304.101. A consultant appointed under 5 U.S.C. § 3109 may be employed without pay. *See* 5 C.F.R. § 304.102(h). Thomas waived compensation in writing and was serving unpaid until his subsequent appointment described below in paragraph 8.

2



4. Thomas is designated as a Special Government Employee (SGE) under 18 U.S.C. § 202. An SGE is an officer or employee who is retained, designated, appointed, or employed to perform temporary duties either on a full-time or intermittent basis, with or without compensation, for not more than 130 days during any period of 365 consecutive days.

5. On February 3, 2025, I executed human resources forms associated with Thomas's appointment ("appointment documentation") in my role as the Appointing Official. It is common during transitions between administrations, when many individuals are onboarding in a short period of time, for such appointment documentation to be executed after the individual's employment at Treasury begins. Subsequent review of the appointment documentation I executed on February 3, 2025, identified an error in the identified period of Thomas's Consultant appointment. Specifically, the February 3, 2025, documentation erroneously stated that Thomas's start date was February 9, 2025. As described above, Thomas has been a Treasury employee since January 23, 2025. Accordingly, on February 10, 2025, I executed revised appointment documentation for Thomas, which reflected the correct appointment term of January 23 to March 24, 2025.

6. The Summary of Duties for Thomas's Consultant appointment states that: "The Senior Advisor will work very closely with the Office of Fiscal Assistant Secretary and Fiscal Service - and in particular the Office of the Commissioner to execute Fiscal's mission of promoting the financial integrity and operational efficiency of the federal government through exceptional accounting, financing, collections, payments, and shared services. The Senior Advisor shall focus on key issues for Fiscal, including but not limited to: (1) Operational Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect

*[signature] 3/4/2025*

User Credential Costs. The Senior Advisor shall work closely with key internal, external, and interagency stakeholders to execute Fiscal's mission."

7. 5 C.F.R. § 304.102(b) defines a consultant as "a person who can provide valuable and pertinent advice generally drawn from a high degree of broad administrative, professional, or technical knowledge or experience." 5 C.F.R. § 304.103(c) defines a consultant position as "one that requires providing advice, views, opinions, alternatives, or recommendations on a temporary and/or intermittent basis on issues, problems, or questions presented by a Federal official." Agencies may not employ consultants to preform managerial or supervisory work. *See* 5 C.F.R. § 304.103(b).

8. At the request of the Treasury Chief of Staff (hiring manager), my office pursued a change to Thomas's appointment as the Senior Advisor for Technology and Modernization, such that he would become a Temporary Transition Schedule C (*see* 5 C.F.R. § 213.3302; <u>U.S. Office of Personnel Management Memorandum for Heads of Executive Departments, Independent Agencies, Inspectors General and the Council of the Inspectors General on Integrity and Efficiency dated January 8, 2025</u>). My office successfully appointed Thomas to this Temporary Transition Schedule C position effective February 13, 2025, for a period not to exceed March 24, 2025, at which point Mr. Krause was no longer employed as a Consultant under 5 U.S.C. § 3105. Thomas retains his ethics designation as an SGE under this new Schedule C appointment. In this position, Thomas will work closely with the Chief of Staff, the Under Secretary for Domestic Finance, and the Office of Fiscal Assistant Secretary and Fiscal Service to lead the development, execution, and management of the information technology and technological modernization efforts and programs for the Department of the Treasury and the internal management of the Department and its bureaus

4

*[signature]* 3/4/2025

– including the Bureau of the Fiscal Service – as it relates to technology. Mr. Krause is a paid employee.

9. On January 21, 2025, Treasury appointed Marko Elez as Special Advisor for Information Technology and Modernization (Treasury Departmental Offices, Office of the Chief of Staff), under Treasury's authority to establish temporary transitional Schedule C positions. *See* 5 C.F.R. § 213.3302. Appointments under this authority may be made for a period not to exceed 120 days with one extension of an additional 120 days. As described herein, Marko was a Treasury employee between January 21 and February 6, 2025. The Position Description for Marko states that his roles and responsibilities included conducting "special and confidential studies on a variety of strategies and issues related to Treasury's information technology," and identifying, analyzing, and making "recommendations to strengthen Treasury's hardware and software."

10. Although Marko could have been designated as an SGE because the appointment was to perform temporary duties either on a full-time or intermittent basis for not more than 130 days, the Treasury department Ethics office *did not* designate Marko as a Special Government Employee, meaning that Marko had to comply with additional ethics requirements that are not required for SGE positions.

11. On February 6, 2025, Marko resigned from his position. He is no longer employed by the Department of the Treasury.

12. On February 19, 2025, Treasury appointed Ryan Wunderly as Special Advisor for Information Technology and Modernization (Treasury Departmental Offices, Office of the Chief of Staff), under Treasury's authority to establish temporary transitional Schedule C positions. *See* 5 C.F.R. § 213.3302. Ryan's job duties as identified in the position

5

description are substantially the same as those described in Marko's position description. Ryan is not designated as a Special Government Employee.

13. According to documentation I received and reviewed in the course of my duties, on February 19, 2025, Treasury's Acting Assistant Secretary for Management entered into a Memorandum of Understanding with the Acting Director of the Office of Personnel Management (OPM) for the temporary detail of Gavin Kliger from OPM to the IRS to "provide experienced engineering assistance that would contribute to more effective and efficient tax administration practices in support of fulfilling the President's DOGE mission at the IRS." The detail was effective on February 19, 2025, for a period not to exceed 120 days, but may be extended for up to 120 additional days, subject to the availability of appropriations. Gavin reports to John York, Assistant Secretary for Management at Treasury, or his designee.

14. On February 25, 2025, Treasury appointed Linda Whitridge as a Special Advisor in the Office of the Chief of Staff under Treasury's authority to establish temporary transitional Schedule C positions. See 5 C.F.R. § 213.3302. The position description for Linda states that she will "advise the Chief of Staff and other Treasury officials on a variety of policy and management issues of interest to the Chief of Staff office, the Department, or its components." Linda is not currently designated as a Special Government Employee.

15. On February 28, 2025, Samuel Corcos was appointed under 5 U.S.C. § 3109 as a Consultant for Treasury (Departmental Offices, Office of the Chief of Staff) with the title of Senior Advisor for Technology and Modernization. As detailed above, the relevant statutory authority is 31 U.S.C. § 332(1) and the relevant appropriation is section 113 of Division B of Pub. L. No. 118-47. Consultants appointed under 5 U.S.C. § 3109 are

Federal civil service employees under 5 U.S.C. § 2105. *See* 5 C.F.R. § 304.101. A consultant appointed under 5 U.S.C. § 3109 may be employed without pay. *See* 5 C.F.R. § 304.102(h). Samuel waived compensation in writing and is serving unpaid.

16. The description of duties and responsibilities for Samuel states that "The Senior Advisor for Technology and Modernization shall work closely with the Chief of Staff, the Under Secretary for Domestic Finance, and the Office of Fiscal Assistant Secretary and Fiscal Service to lead on the development, execution, and management of the information technology and technological modernization efforts and programs for the Department of the Treasury and the internal management of the Department and its bureaus – including the Bureau of the Fiscal Service (see additional detail below) – as it relates to technology. He "will work very closely with the Office of Fiscal Assistant Secretary and Fiscal Service – and in particular the Office of the Commissioner – to execute Fiscal's mission of promoting the financial integrity and operational efficiency of the federal government through exceptional accounting, financing, collections, payments, and shared services. The Senior Advisor shall focus on key issues for Fiscal, including but not limited to (1) Operational Resiliency; (2) Advancing Governmentwide Payment Integrity; (3) Critical Modernization Programs; (4) Improving the Payment Experience; and (5) TreasuryDirect User Credential Costs. The Senior Advisor shall work closely with key internal, external, and interagency stakeholders to execute Fiscal's mission."

17. Samuel is currently designated as an SGE.

18. All newly appointed employees of Treasury are required to complete the following trainings (collectively, "New Employee Trainings"):

    a. Annual Privacy Awareness Training, which covers various aspects of privacy

7

including: providing definitions of key terms, discussing employee responsibilities to safeguard personally identifiable information (PII), highlighting individual expectations of privacy and identifying the laws that govern individual privacy rights. Educate and inform employees of their responsibility to safeguard personally identifiable information (PII) when collecting, maintaining and disseminating PII in the normal course of performing their assigned duties.

b. Annual Cybersecurity Awareness Training, which covers employee roles and responsibilities in protecting Treasury-wide systems from cybersecurity risks and threats, highlighting policies and practices related to business email, identity, incident response, insider threats, multi-factor authentication, phishing, public WiFi, remote work, social engineering, social media, and passwords.

c. Sexual Harassment Prevention in the Workplace, which reviews Treasury policy regarding sexual harassment and employee responsibilities for preventing sexual harassment in the workplace.

d. Treasury No FEAR Training (New Hire), reviews the requirements of the No FEAR Act and agency accountability for violations of antidiscrimination and whistleblower protection laws.

e. New Employee Ethics Training, which focuses on government ethics laws and regulations, including an overview of the 14 General Principles of Ethical Conduct and ethics scenarios on Impartiality and Covered Relationships; Financial Conflicts of Interest; Outside Activities and Representation; Gifts; Misuse of Position; Seeking and Post Employment; and Political Activities.

f. Fundamentals of Record Management, covering basic responsibilities for

8

managing Federal records, including the laws, policies and procedures that govern Federal records management.

g. Treasury Insider Threat Awareness, covering employee roles and responsibilities in protecting the Department of the Treasury from insider threats to Treasury assets.

19. These trainings generally are made available through the Integrated Talent Management system, and completion of trainings is recorded in the system. However, in certain instances, trainings may be completed outside of ITM (*e.g.* via a paper training, or in-person training).

20. As of the date of this signing, Thomas Krause has completed the "New Employee Ethics Training" outside of ITM and has been assigned, and will be required to complete, the remaining New Employee Trainings and the "2025 Safeguarding Federal Tax Information" and the "Bureau of Fiscal Service Rules of Behavior" trainings through ITM. For additional information about these trainings, see the Gioeli Declaration ¶ 10.

21. Marko's ITM account was in the process of being established when he resigned from employment, so Marko did not complete the New Employee Trainings. He resigned before the date his New Employee Trainings were required to be completed.

22. On February 28, 2025, Ryan completed the New Employee Trainings through ITM. Ryan also completed the assigned trainings "2025 Safeguarding Federal Tax Information" and the "Bureau of Fiscal Service Rules of Behavior."

23. I have been instructed by Treasury Chief of Staff Daniel Katz to assign all current and future Treasury DOGE Team members – regardless of the hiring authority used to onboard

them (including whether they are detailed from other agencies, or hired as temporary consultants) – New Employee Trainings, "Bureau of Fiscal Service Rules of Behavior," and "2025 Safeguarding Federal Tax Information" trainings. The only exception to this instruction is that, in the case of a detailee that has already taken a training on the same topic at their agency, the detailee would not be required to take a duplicative training.

24. Accordingly, Linda and Samuel—newly onboarded employees—will be assigned, and required to complete, the New Employee Trainings, "Bureau of Fiscal Service Rules of Behavior," and "2025 Safeguarding Federal Tax Information" trainings.

25. Detailees to Treasury remain employees of the detailing agency and therefore generally are not required to complete Treasury's New Employee Trainings. Any new employee training requirements for detailees are assigned and fulfilled at detailees' employing agency at the time of appointment. Treasury may assign specific trainings to detailees required or associated with the work the detailee is expected to perform while on detail.

26. According to information provided to Treasury by OPM, which I have reviewed but not independently verified, Gavin (a detailee from OPM) completed OPM's three required trainings: IT Security Training, Privacy Awareness Training, and Ethics Training.

27. I have also been informed that Gavin received briefings on Section 6103 of the Internal Revenue Code and ethics from Internal Revenue Service personnel on February 13, 2025.

28. Based on the trainings Gavin completed through OPM and the instruction by Treasury Chief of Staff Daniel Katz, I will assign Gavin the following additional Treasury trainings:

    a. Annual Cybersecurity Awareness Training

    b. Sexual Harassment Prevention in the Workplace

10

   c. Treasury No FEAR Training (New Hire)

   d. Fundamentals of Record Management

   e. Treasury Insider Threat Awareness

   f. Bureau of Fiscal Service Rules of Behavior

   g. 2025 Safeguarding Federal Tax Information

*[signature] 3/4/2025*

*[signature] 3/4/2025*

I declare the foregoing to be true and correct, upon penalty of perjury.

Dated: 3/4/2025

Signed: *[signature]*

Michael J. Wenzler

Associate Chief Human Capital Officer

for Executive and Human Capital Services

Departmental Offices of the Department of the Treasury