**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| American Federation of Teachers, *et al.*, | Case No. 8:25-cv-00430-DLB |
| *Plaintiffs*, | |
| vs. | Date:    March 17, 2025 |
| | Time:    10:30 a.m. |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury, *et al.*, | Place:   Greenbelt Courthouse |
| | Judge:   Hon. Deborah Boardman |
| *Defendants*. | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     This Court Has Jurisdiction .......................................................................................2

       A.    This Court Correctly Held that Plaintiffs Have Standing ........................2

       B.    This Court Correctly Held that Defendants' Decisions to Disclose
            Constitute Final Agency Actions ............................................................4

II.    Plaintiffs Are Likely to Prevail on the Merits........................................................6

       A.    Defendants' Decisions to Disclose Do Not Fall Under the Need-to-Know
            Exception .................................................................................................6

       B.    The Routine Use Exception Does Not Immunize Defendants' Unlawful
            Disclosures...............................................................................................9

       C.    Defendants' Plainly Deficient Administrative Records Confirm Their
            Actions Were Arbitrary and Capricious ..................................................10

III.   Defendants' Disclosures Will Cause Irreparable Harm Absent an Injunction .................12

IV.   The Equities and Public Interest Favor An Injunction........................................13

V.    The Court Should Mitigate the Prejudicial Effects of Defendants' Sandbagging ............14

CONCLUSION....................................................................................................................15

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967).............................................................................................4

*Al Warafi v. Obama*,
  2009 WL 4730749 (D.D.C. Dec. 4, 2009).............................................................15

*All. for Retired Americans v. Bessent*,
  25-cv-0313, 2025 WL 740401 (D.D.C. Mar. 7, 2025)...............................1, 3, 8, 11

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003) ..................................................................................2

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
  501 U.S. 1301 (1991)...........................................................................................13

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)................................................................................................4

*Boyd v. Snow*,
  335 F. Supp. 2d 28 (D.D.C. 2004) ..........................................................................6

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)................................................................................................5

*Doe v. Chao*,
  540 U.S. 614 (2004)................................................................................................2

*Garey v. James S. Farrin, P.C.*,
  35 F.4th 917 (4th Cir. 2022) ...................................................................................2

*Goodman v. Diggs*,
  986 F.3d 493 (4th Cir. 2021) ..................................................................................4

*Judicial Watch, Inc. v. Department of Energy*,
  412 F.3d 125 (D.C. Cir. 2005).................................................................................9

*Jurewicz v. U.S. Dep't of Agric.*,
  891 F. Supp. 2d 147 (D.D.C. 2012).........................................................................5

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)................................................................................................10

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

*New York v. Trump,*
  25-cv-01144, 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025) ...........................................5, 6, 12

*Parks v. Internal Revenue Serv.,*
  618 F.2d 677 (10th Cir. 1980) ..................................................................................................7

*Racing Enthusiasts & Suppliers Coal. v. Env't Prot. Agency,*
  45 F.4th 353 (D.C. Cir. 2022) ...................................................................................................5

*SEC v. Chenery Corp.,*
  318 U.S. 80 (1943) .....................................................................................................................9

*Sierra Club v. EPA,*
  955 F.3d 56 (D.C. Cir. 2020) .....................................................................................................5

*Silvestri v. Gen. Motors Corp.,*
  271 F.3d 583 (4th Cir. 2001) ...................................................................................................15

*Venetian Casino Resort, LLC v. EEOC,*
  530 F.3d 925 (D.C. Cir. 2008) ...................................................................................................6

*W. Watersheds Project v. Bernhardt,*
  519 F. Supp. 3d 763 (D. Idaho 2021) ......................................................................................11

**STATE CASES**

*Hearst Corp. v. State, Off. of State Comptroller,*
  882 N.Y.S.2d 862 (2009) ...........................................................................................................3

*Progressive Animal Welfare Soc'y v. Univ. of Wash.,*
  125 Wash. 2d 243 (1994) ...........................................................................................................3

**FEDERAL STATUTES**

5 U.S.C. § 551 .............................................................................................................................4, 5

5 U.S.C. § 552a ...............................................................................................................................9

**FEDERAL REGULATIONS AND EXECUTIVE ORDERS**

85 Fed. Reg. 11776 (Feb 27, 2020) ..............................................................................................10

Executive Order 14,158 ...............................................................................................................7, 9

**TREATISES**

Restatement (Second) of Torts § 652B .............................................................................................3

## <u>INTRODUCTION</u>

On the eve of a preliminary injunction hearing set for Monday at Defendants' insistence, Defendants have abandoned any pretense of fairness. In support of their Opposition, Defendants have submitted two extra-record declarations that contradict prior sworn declarations and administrative records they certified as complete and accurate. And they have promised to submit an unspecified number of "relevant" documents after Plaintiffs' reply brief is due and in flagrant disregard of a court-ordered deadline that lapsed *one week ago*. The Court should reject this extraordinary attempt to prevent the Court from meaningfully evaluating Defendants' challenged actions.

Defendants' latest effort to manufacture a record that best suits their needs does not move the goalposts so much as destroy them. To use just one example: four weeks ago, Defendants submitted sworn declarations that six DOGE affiliates had access to Education's data systems. One week ago, they produced an administrative record that included an order authorizing access to *all* of Education's systems for all DOGE affiliates but information for just four DOGE affiliates. Yesterday evening, they submitted a declaration claiming that only one DOGE affiliate has ever had access to Education's systems—a man whose existence the administrative record does not even acknowledge. Defendants' cavalier treatment of the administrative record has made it impossible to tell which version of events—if any—is the truth, and their insistence on evading any questioning or discovery makes a mockery of this Court's review.

No matter. Defendants insist the Court should conclude on this cherry-picked record that they acted lawfully and fulfilled their obligation to engage in reasoned decisionmaking. To state Defendants' argument is to refute it. If Defendants' continuous efforts to change the record show anything, it is this: Defendants have never known why any of these DOGE affiliates needs

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

to access personally identifiable information belonging to millions of Americans.  And they never will, because there was never any such need—only Defendants' arbitrary desire to accommodate DOGE, no matter the cost.  The Court should enjoin Defendants.

## ARGUMENT

## I.     This Court Has Jurisdiction

The Court has already concluded that it has jurisdiction.  Yet Defendants spill considerable ink rehashing the same arguments this Court has previously rejected.  In particular, Defendants argue the Court wrongly decided that Plaintiffs have standing and that Defendants' decisions to disclose were not final agency actions.[1]  But Defendants have failed to identify any intervening changes in either the factual record or the law that would justify what is in effect a motion for reconsideration.  *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 516 (4th Cir. 2003) (recognizing that "exceptional circumstances justifying reconsideration" include "full trial" or "full discovery").  Plainly, the Court has jurisdiction.

### A.     This Court Correctly Held that Plaintiffs Have Standing

The Court correctly concluded that "[t]he unauthorized disclosure of the plaintiffs' sensitive personal information is an injury in fact."  Mem. Op. at 15.  While Defendants may "disagree" with that decision, Opp. at 11–12, they have not provided any basis to question the soundness of the Court's reasoning.  Rather than identify any precedential decisions that would affect this Court's assessment of standing, Defendants conspicuously *ignore* the Fourth Circuit's binding decision in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), which

---

[1] Defendants also advance a token argument that the APA does not provide a cause of action for violations of the Privacy Act, while acknowledging that the Fourth Circuit has recognized otherwise, *see* ECF No. 62 ("Opp.") at 23. Curiously, Defendants do not acknowledge that the Supreme Court has *also* recognized that violations of the Privacy Act may be reviewable under the APA.  *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004).

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

concluded that injuries to personal privacy are cognizable Article III injuries—and upon which the Court relied.  Mem. Op. at 12.

As this Court—and others—have concluded, the unlawful disclosure of a plaintiff's information under the Privacy Act has a "close relationship to the harm to privacy vindicated by the common-law tort of intrusion upon seclusion."  *All. for Retired Americans v. Bessent*, 25-cv-0313, 2025 WL 740401, at *15–18 (D.D.C. Mar. 7, 2025); *see also* Mem. Op. at 12–15. Defendants' insistence that there is a material difference between unauthorized disclosure to other employees within the government and disclosures to the public,[2] Opp. at 14–15, cannot be squared with the basic contours of intrusion upon seclusion, which "does not depend upon any publicity given to the person whose interest is invaded."  *All. for Retired Americans*, 2025 WL 740401, at *16 (quoting Restatement (Second) of Torts § 652B ("Restatement")).  Equally meritless are Defendants' attempts to downplay the significance of their decisions to disclose Plaintiffs' personally identifiable information ("PII") as not "substantial," Opp. at 15, or "highly offensive to the ordinary reasonable man," Restatement § 652B cmt.d.  It is indisputable that the unauthorized disclosure of highly sensitive personal information is "highly offensive."  Mem Op. at 13 (quoting Restatement § 652B); *see also Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wash. 2d 243, 254 (1994) ("[T]he disclosure of a public employee's social security number would be highly offensive to a reasonable person."); *Hearst Corp. v. State, Off. of State Comptroller*, 882 N.Y.S.2d 862, 875 (2009) (reasonable person would find disclosure of "precise birth dates" and "full name" "to be offensive and objectionable").

---

[2] Defendants baldly assert that Plaintiffs have alleged "[n]othing like" "examination or review of sensitive material." Opp. at 15.  That is demonstrably untrue.  *See, e.g.*, Am. Compl. ¶ 12 (alleging DOGE representatives have "accessed Defendants' data systems and the sensitive information contained within").  It is also ironic, given Defendants' strenuous objections to disclosing any information about what DOGE affiliates have accessed or how they have used their access.

Defendants' assertions that Plaintiffs lack standing for lack of "public" disclosure, Opp. at 14–15, are especially unreasonable given their resistance to Plaintiffs' requests for extra-record or supplemental discovery concerning how DOGE affiliates have *used* their access. Plaintiffs have alleged—based on public reports—that DOGE affiliates have used their access to feed PII into unsecured artificial intelligence ("AI") tools and software. *See* Am. Compl. ¶ 104 & n.96. And there is some evidence that would enable the Court to infer as much—for example, Elez "automat[ed]" review of payments in Treasury, ECF No. 27-2 at 5, and Krause's official responsibilities at Treasury include "implementing . . . AI." ECF No. 51-2 at 21. Having prevented Plaintiffs from developing this evidence through discovery, Defendants cannot turn around and accuse Plaintiffs of failing to show any public disclosure or non-speculative risk of identity theft. That is nothing more than a "heads-I-win-tails-you-lose" argument, which courts disfavor. *Goodman v. Diggs*, 986 F.3d 493, 497 n.6 (4th Cir. 2021).

> **B.** **This Court Correctly Held that Defendants' Decisions to Disclose Constitute Final Agency Actions**

The Court likewise correctly decided that Defendants' "decisions to grant DOGE affiliates access to the plaintiffs' personal information are final agency actions." Mem. Op. at 18.

For the first time in this case, Defendants argue that their decisions to disclose are not agency actions at all. Opp. at 14–16. This argument is frivolous. The "central purpose" of the APA is to "provid[e] a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Courts thus interpret agency action "hospitabl[y]." *Id.* at 904 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140–41 (1967)). Even without that hospitable gloss, Defendants' decisions to grant DOGE affiliates access were plainly "order[s]" within the meaning of the APA. 5 U.S.C. § 551(6). Indeed, Defendants previously asserted that

-4-

their administrative records include memorandums, work plans, engagement plans, and other materials that "reflect each agency's decisionmaking as to systems access for DOGE affiliates." ECF No. 54 at 7. Defendants' telling decision to elide any mention of the administrative records in their discussion of agency action does not make these determinations any less an agency order or rule. *See, e.g.*, *New York v. Trump*, 25-cv-01144, 2025 WL 573771, at *19-20 (S.D.N.Y. Feb. 21, 2025) (Treasury's engagement plan was agency policy or practice). Grasping at straws, Defendants analogize their *policy* decisions to grant DOGE affiliates access to "open[ing] an e-mail account for an employee" or "staff[ing] an employee on particular matter." Opp. at 18. These analogies fail. None of the examples Defendants list are subject to *statutory* requirements that dictate how and under what circumstances Defendants may act. The decision to disclose sensitive personal records is. *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281, 317 (1979) (agency "decision to disclose . . . employment data" in potential violation of statute is reviewable agency action); *Jurewicz v. U.S. Dep't of Agric.*, 891 F. Supp. 2d 147, 151 (D.D.C. 2012) ("Decisions to disclose information pursuant to FOIA are in the nature of informal adjudications, and as such are reviewable under the generally applicable standards of [the APA]." (citation and internal quotation marks omitted)).

Defendants' arguments that even if agency actions, the decisions were not "final" under the APA are equally meritless. Finality of agency action "is a 'pragmatic' inquiry that requires courts to examine the 'concrete consequences' of an agency action." *Racing Enthusiasts & Suppliers Coal. v. EPA*, 45 F.4th 353, 358 (D.C. Cir. 2022) (quoting *Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020)). Here, Defendants' final grant-of-access decisions resulted in immediate, real-world consequences—namely, DOGE affiliates were able to access Plaintiffs' sensitive data from Defendants' systems without first obtaining Plaintiffs' consent. As this

Court, and others, have concluded, these decisions "made determinations about the plaintiffs' rights to protect their personal information."[3]  Mem. Op. at 18; *see Trump*, 2025 WL 573771, at *20.

## II.    Plaintiffs Are Likely to Prevail on the Merits

### A.    Defendants' Decisions to Disclose Do Not Fall Under the Need-to-Know Exception

The Opposition provides no reason to depart from this Court's prior holding that the disclosures made by Defendants OPM and Education "do[] not fall within the need-to-know exception and thus violate[] the Privacy Act."  Mem. Op. at 25, 29.  Defendants make no new arguments and point to no new evidence.  Indeed, the Opposition does not cite to the administrative records *a single time* in its discussion of the DOGE affiliates' supposed "need to know."  Nor does it attempt to refute even part of the Motion's discussion of the records.  *See* ECF No. 59 at 16–21.  This is presumably because Defendants recognize—as they must—that the administrative records serve only to bolster this Court's prior determination.[4]  Instead, Defendants rely on the same arguments and the same evidence the Court rejected at the TRO stage.

---

[3] Defendants' attempt to distinguish *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008) on the basis that "Plaintiffs do not even allege that Defendants adopted a broad policy of allowing employees unfettered access to its data systems" is particularly misguided.  Opp. at 21.  The administrative records confirm that Defendants *did* adopt a broad policy of granting DOGE affiliates access.  *See, e.g.*, ECF No. 51-3 at 29 (authorizing DOGE personnel "full and prompt access to all unclassified IT systems and data"); ECF No. 51-2 at 63 (authorizing access as part of 4–6 week engagement plan).

[4] For instance, the administrative record for Education contains a "Expert or Consultant Appointment Request" for ED-4 purports to "*[e]xplain in full*" ED-4's responsibilities at Education as "[a]dvising the Department on change management" and "[p]erforming cost reductions."  ECF 51-3 at 22 (emphasis added).  It says nothing about the software modernization initiative that Defendants now claim to be the source of all of the DOGE affiliates' "need to know" Plaintiffs PII.  *See Boyd v. Snow*, 335 F. Supp. 2d 28, 38 (D.D.C. 2004) (Courts do not credit an agency's supposed "need to know" where "it is far from clear" that the agency disclosed the records "for the reason offered by the [agency.]").

The Court should not hesitate to reach the same conclusion here.  At bottom, Defendants'

contention remains that Executive Order 14,158 (the "DOGE Executive Order") supplies the

requisite "need to know."[5]  Opp. at 26.  But the Court already rejected the notion that this

vaguely worded Executive Order could provide the need to know.  *See* Mem. Op. at 22–25 &

n.9; *id.* at 24 (citing *Parks v. Internal Revenue Serv.*, 618 F.2d 677 (10th Cir. 1980)).[6]  The Court

correctly found that neither the Executive Order nor any of Defendants' extra-record declarations

could "explain *why* . . . the DOGE affiliates . . . *need* such comprehensive, sweeping access to

the plaintiffs' records."  Mem. Op. at 23 (Education); *see id.* at 27–28 (OPM).

Although the Court has not yet weighed in on the merits of disclosures made by Treasury,

its prior reasoning nonetheless dooms Defendants' need-to-know arguments with respect to those

disclosures.  As with OPM and Education, Defendants latch onto the DOGE Executive Order to

supply the justification for Treasury's disclosures.  Opp. at 26.  For the reasons just discussed,

this rationale fails.  Defendants also rely on the Krause Declaration to argue that DOGE affiliates

"need to access Privacy Act-protected records to assess and modernize payment systems and

financial report tools."  Opp. at 27 (citing Krause Decl. ¶¶ 2, 5).  But this vague rationale does

nothing to explain the need for the DOGE affiliates to access Plaintiffs' PII.  Defendants have

---

[5] Defendants had previously relied on a second Executive Order, signed February 11, 2025 to justify their disclosures to DOGE affiliates at OPM.  *See* Mem. Op. at 27 ("The government says their duties are to implement the Workforce Executive Order.").  They now appear to have abandoned that justification, instead clinging only to the DOGE Executive Order.

[6] Defendants try to sidestep *Parks*, recasting it as narrowly focused on the use of PII to propose savings bond programs, a purpose specifically disfavored by the Privacy Act's legislative history.  Opp at 26-27.  The Court should reject this cramped reading.  *Parks* analyzed whether the rationale articulated in the Executive Order at issue actually created a need to know the particular information disclosed—in that case, the plaintiff's personnel file.  *See* 618 F.2d at 681.  The court concluded it could not.  *Id.*  Like the savings bond program championed by the Executive Order in *Parks*, the "Software Modernization Initiative" announced by the DOGE Executive Order may well be a "worthy effort," but "it does not justify the use of [PII]."  *Id.*  Because the DOGE Executive Order itself does not articulate a need to know, it cannot have authorized disclosure consistent with the Privacy Act.  As the *Parks* court concluded, an executive order cannot "license the defendants to violate the Privacy Act," *id.*, and Defendants are wrong to urge otherwise.

not disputed Plaintiffs' contention that Treasury is capable of providing access to systems of records while obscuring PII.  *See* ECF No. 59-1 at 26 (citing ECF No. 59-8 at 7).  Yet the Opposition does not so much as attempt to articulate a need for the *unredacted* records.  *Cf.* Mem. Op. at 23 & n.10 (noting "most PII" contained within an Education system of record "can be masked" and concluding that the government had failed to "explain *why* . . . the DOGE affiliates . . . *need* such comprehensive, sweeping access to the plaintiffs' records").

Defendants' latest extra-record submission does not establish "need to know," either. The Matteson Declaration asserts that a "system access audit" revealed that only one DOGE team member, Ramada, had access to one of four data systems checked and that he was unable to view PII.  *See* Decl. of Steven Matteson ("Matteson Decl.") ¶¶ 2, 3.  To the extent that is true— and it is far from clear that it is[7]—the "fact" that DOGE affiliates did not have access to Plaintiffs' PII in four Education systems undermines the February 5 memorandum's assertions that DOGE had a "need to know" the PII in all systems.  ECF No. 51-3 at 29.  Moreover, the declaration conspicuously does not mention whether DOGE affiliates had access to the other 106 Education systems—some of which also contain PII.[8]

The Opposition also fails to rebut Plaintiffs' contention that two of the DOGE affiliates at Education are unlikely to be employees of the Department, and therefore cannot be covered by the need-to-know exception.  Defendants argue that this Court can look to the Ramada Declaration to establish that "[Ramada] was detailed to the agency and that the remaining

---

[7] It has been reported that the level of access given DOGE affiliates in OPM, for example, would have allowed them to "alter internal documentation of their own activities."  Am. Compl. ¶ 77 n.65.  It is unclear whether system access audits can be tampered in this way.  Notably, Defendants submitted an audit spreadsheet for just one agency— OPM—and that spreadsheet apparently omitted access information for three DOGE affiliates.  Opp. at 9.

[8] This is a material omission, given that Education ordered on February 5 that *all* DOGE affiliates be granted "*full* and prompt access to *all* unclassified IT systems and data" on February 5, 2025.  ER 51-3 at 29 (emphasis added). The declaration also states that Ramada had access and used his access *before* the February 5 memorandum, which is nowhere documented in the administrative record Defendants produced.

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

individuals working there to implement Executive Order 14,158 were either hired by or detailed to the Department of Education." Opp. at 25 n.3.  But the mere fact that someone was detailed to a Department does not establish that person as an employee of that Department.  Indeed, the D.C. Circuit's decision in *Judicial Watch, Inc. v. Department of Energy*, 412 F.3d 125 (D.C. Cir. 2005), cited by Defendants, lays out a test to determine whether a detailee is in fact an employee. *See id.* at 131.  The Opposition offers no substantive response to Plaintiffs' argument that multiple Education DOGE affiliates are unlikely to be employees under that test.

### B.    The Routine Use Exception Does Not Immunize Defendants' Unlawful Disclosures

Defendants' routine use arguments fail out of the gate because, as Plaintiffs have explained, the administrative records do not contain the documentation required by the Privacy Act to show that a disclosure was made pursuant to a routine use.  *See* ECF No. 59-1 at 18 n.10 (citing 5 U.S.C. § 552a(c)(1)).  Without such documentation, Defendants could not have made these disclosures pursuant to a routine use.  Nor may they assert such a justification after the fact. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").  Defendants offer no response on this point, which alone sinks their routine use argument.

In any event, for the reasons put forth in Plaintiffs' prior briefing, none of the routine uses cited by the Opposition are applicable to Defendants' disclosures.  *See* ECF No. 28 at 14–17. The Opposition suggests, for instance, that OPM's SORNs authorize a disclosure for the routine use of eliminating waste, fraud, and abuse "*in certain circumstances*."  Opp. at 28 (emphasis added).  What it conveniently omits, however, is that those circumstances are expressly limited to disclosures made pursuant to a "computer matching" agreement, ECF No. 28 at 14, and that Defendants have already conceded—under direct questioning from this Court—that they are "not

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

aware of a computer matching agreement" between OPM and DOGE, Declaration of Xiaonan

April Hu ("Hu Decl."), Ex. A at 92:11–12.  Treasury's SORNs likewise authorize a routine use

"for the purpose of identifying, preventing, or recouping improper payments," Privacy Act of

1974: System of Records, 85 Fed. Reg. 11776, 11780 (Feb 27, 2020), but Defendants'

declarations make clear that Defendants have improperly understood this "routine use" exception

to encompass actions that Congress has forbidden.  *See* ECF 28 at 15.  The routine uses for

Education are similarly inapplicable.  *See* ECF No. 28 at 16–17.[9]  Finally, Defendants' assertion

that information collected to facilitate government benefits is compatible with identifying fraud

or abuse is unsupported and belied by Defendants' Privacy Impact Assessments.

### C.    Defendants' Plainly Deficient Administrative Records Confirm Their Actions Were Arbitrary and Capricious

Defendants have conceded that if the threadbare administrative records are insufficient to

support their decisions to grant access, "the appropriate course" is for the Court to conclude that

the decisions were arbitrary and capricious and order preliminary injunctive relief.  ECF No. 54

at 8–9.  The Court should hold Defendants to their concession.  Because the record confirms that

Defendants decided to grant DOGE affiliates sweeping access without any thought, much less

deliberation, about "important aspect[s] of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*

*v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), the Court should enjoin further access.

The administrative records and Defendants' Opposition make clear that the decisions to

grant DOGE affiliates unfettered access to data systems containing confidential information were

arbitrary and capricious twice over because Defendants (1) failed to consider the statutory

---

[9] The administrative record does not support Defendants' contention that Education granted access to the Education DOGE affiliates "to support the investigation of possible fraud and abuse" as Defendants contend.  Opp. at 28 (citations omitted).  Instead, it suggests that Education granted them access for a "[s]oftware [m]odernization [i]nitiative."  ECF No. 51-3 at 29.

requirements for granting access without consent *before* granting access to confidential systems of records; and (2) ignored the security risks associated with handing reams of sensitive PII to roaming government hatchet men who have not been properly vetted or trained.

Defendants attempt to obfuscate the glaring deficiencies in the record by suggesting that *Plaintiffs'* expectations of the record are "unrealistic," Opp. at 29, but the requirement of reasoned decisionmaking is imposed by the APA—not by Plaintiffs—and even a cursory examination of the record makes clear that Defendants have fallen woefully short of it. Education formally granted the DOGE team "*full and prompt* access to *all* unclassified IT systems and data" via a half-page memorandum that offered no justification for this sweeping access beyond a citation to the DOGE Executive Order.  ECF No. 51-3 at 29 (emphasis added). OPM's administrative record does not include *any* memoranda or reports documenting the agency's decision to provide DOGE affiliates with access.  The only glimmer of explanation comes from an email chain—written *after* some affiliates had obtained access to OPM systems— urgently granting the remaining DOGE affiliates systems access, despite OPM having no "immediate plans" to make use of that access.  ECF No. 51-1 at 32–33.  And Treasury failed to even consider the possibility that it could follow its usual practice of redacting or otherwise obscuring PII.  ECF No. 59-8 at 7.  This unexplained departure from "prior norms" is arbitrary and capricious.  *W. Watersheds Project v. Bernhardt*, 519 F. Supp. 3d 763, 780 (D. Idaho 2021).

Defendants also overlooked the serious security risks associated with providing DOGE affiliates who have not been properly vetted or adequately trained with unfettered access to Plaintiffs' PII.  The Opposition tries to paper over this glaring deficiency by selectively citing to extra-record declarations, but the administrative records lay bare how Defendants' careless decisions introduced unnecessary security risks.  The Opposition emphasizes, citing the Ramada

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

Declaration, that Education has "required all of its DOGE Team members to complete information security training." Opp. at 20. But Ramada's supplemental declaration admits that one DOGE affiliate in fact had *not* completed ethics or security trainings, Supp. Ramada Decl. ¶ 9, and the administrative record reveals that another affiliate assumed his "High Risk/Public Trust Position" without first undergoing the required "[b]ackground [i]nvestigation," ECF No. 51-3 at 26. OPM's Acting Director, meanwhile, stated over email that the DOGE affiliates were in such a hurry to get going that they had no "time to go through a lot of presentations on what the systems are," let alone learn what security protocols they must follow. ECF No. 51-1 at 31.

Another federal court has already found that Treasury's "chaotic and haphazard" processes for permitting the DOGE team access to sensitive data systems were likely arbitrary and capricious. *Trump*, 2025 WL 573771, at *21. The administrative record confirms that conclusion, revealing that Elez did not undergo a full background check before he was granted administrator-level privileges to critical payment systems, *see* ECF No. 51-2 at 68, and confirming that Treasury paid no mind to an internal report designating DOGE "the single greatest insider threat risk the Bureau of the Fiscal Service has ever faced." Am. Compl. ¶ 136 & n.118; *see* ECF No. 54 at 13 ("Plaintiffs provide nothing to suggest that any such document was, in fact, considered by Treasury in granting access.").

## III.    Defendants' Disclosures Will Cause Irreparable Harm Absent an Injunction

The Court has already concluded that Defendants "continuing, unauthorized disclosure of the plaintiffs' sensitive personal information to DOGE affiliates is irreparable harm that money damages cannot rectify." Mem. Op. at 30. Defendants do not point to any factual or legal developments that would alter that conclusion. Nor do they engage with Plaintiffs' careful recitation of the irreparable harm they face. *See* ECF No. 59-1 at 30–32. Instead, Defendants

resort to ipse dixit—first resting on their standing arguments, then baldly asserting that even if plaintiffs have standing, "Plaintiffs nonetheless fail to make a clear showing of actual and imminent harm."  Opp. at 30–31.[10]

If anything, factual developments following this Court's temporary restraining order only reinforce the ongoing threat of irreparable harm.  Defendants granted DOGE affiliates access to Plaintiffs' sensitive data without background checks, *see* ECF No. 51-3 at 14, 26; ECF No. 51-2 at 33; without requiring DOGE affiliates to agree to agency-standard rules of behavior, ECF No. 51-2 at 36; without requiring DOGE affiliates to first undergo the data-security trainings required of agency employees, *see* Supp. Ramada Decl. ¶ 9; and without any consideration for the serious insider risks posed by DOGE affiliate access or their intent to input that information into artificial intelligence tools, *see supra* p. 4.  And although Defendants have repeatedly introduced one-sided, post hoc "evidence" to try and shore up their legal positions, they have not submitted a shred of evidence that even remotely suggests that they are carefully monitoring the *use* of access.  Instead, they have strenuously objected to Plaintiffs' requests for records documenting DOGE affiliates' use of Defendants' data systems.

## IV.    <u>The Equities and Public Interest Favor An Injunction</u>

The remaining factors likewise favor a preliminary injunction.  In balancing the equities, "the Court considers 'the relative harms to the plaintiffs and defendants, as well as the interests of the public at large.'"  Mem. Op. at 31 (quoting *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers)).

---

[10] The Opposition does not respond to Plaintiffs' contention that the Preliminary Injunction issued by the District Court for the Southern District of New York presents no barrier to this Court's issuance of an injunction against Treasury.  *See* ECF No. 59-1 at 31–32.  Accordingly, Defendants have waived any argument to the contrary.

Defendants have not articulated any cognizable harm from an injunction that would outweigh the irreparable harm to Plaintiffs of having their PII accessed by DOGE affiliates without legal authorization or consideration of the insider threat risks posed by such access. Nothing in the administrative records supports Defendants' argument that immediate resumption of access for DOGE affiliates is critical to "the President's ability to effectuate the policy choices the American people elected him to pursue." Opp. at 32. Indeed, this Court has already rejected this exact justification. *See* Mem. Op. at 31 ("The temporary injunction in this case does not prevent the President from effectuating the administration's policies.").

## V.      **The Court Should Mitigate the Prejudicial Effects of Defendants' Sandbagging**

Defendants' actions over the last few weeks can be summarized in a single phrase: "Rules for thee, not for me." Plaintiffs have faithfully followed the Court's schedule—filing a motion for extra-record discovery within 31 hours of receiving Defendants' cherrypicked administrative records, and then filing three days after that a motion for preliminary injunction based on those documents without the benefit of a complete or fair record. Defendants' response has been to exploit Plaintiffs' good faith: first, by representing to the Court that they needed twelve days to make what they falsely represented would be a "substantial" production; then by producing administrative records stuffed with post-hoc and pretextual documents while omitting relevant contemporaneous information; and finally, by introducing extra-record declarations that undermine Defendants' certified administrative records and then *untimely* supplementing with new records *after* Plaintiffs' reply must be filed—all while hamstringing Plaintiffs' ability to challenge or explore the reliability or veracity of any of these ever-shifting facts and documents.

Defendants' actions have made it impossible for Plaintiffs to advance arguments based on the "record," because the record is ever-changing, and there is always something Defendants

have yet to disclose. *See, e.g., Al Warafi v. Obama*, 2009 WL 4730749, at *1 (D.D.C. Dec. 4, 2009) ("[E]leventh hour production of documents surely prejudiced petitioner."). The Court should not reward Defendants' blatant manipulations of the record and judicial process. To prevent further prejudice to Plaintiffs, the Court could consider two options. *First,* it could strike Defendants' new declarations and supplemental records as untimely, decide Plaintiffs' motion for preliminary injunction based on the administrative records as they existed on March 7, and order a quick discovery and summary judgment schedule. *Second,* it could grant a preliminary injunction that expires after a certain number of weeks to give Plaintiffs an opportunity to obtain extra-record evidence and respond to Defendants' latest modifications to the administrative records.[11] What the Court should not do is issue a decision based on Defendants' March 13 extra-record declarations and supplemental records (the latter of which Plaintiffs have not even seen) when Plaintiffs have had no opportunity to pursue their own extra-record discovery or question any of Defendants' declarants about their conflicting statements.[12] That would invert the adversarial system upon which this country's legal system depends. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("[T]he [judicial] process depends on the adversarial presentation of evidence.").

## <u>CONCLUSION</u>

The Court should grant Plaintiffs' Motion for Preliminary Injunction.

---

[11] At least one other court recently ordered discovery and depositions from OPM because the agency has similarly "tried to frustrate the Judge's ability to get at the truth of what happened here," including by submitting a "sham declaration." Hu Decl., Ex. B at 8:6–10.

[12] Consistent with Defendants' prior request, the Court could also convert the TRO to a preliminary injunction based on the TRO record on the basis that Defendants' actions have made it impossible to review the administrative records and order a relatively quick discovery and summary judgment schedule. Given that Monday's hearing remains on calendar, Plaintiffs assume the Court has likely declined this option.

DATED:  March 14, 2025

By:  _/s/ Xiaonan April Hu_

Xiaonan April Hu (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 220-1123
April.Hu@mto.com

John L. Schwab (*pro hac vice*)
Wendy Q. Xiao (*pro hac vice*)
Liam Gennari (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S Grand Ave 50th Floor
Los Angeles, California 90071
(213) 683-9260
John.Schwab@mto.com

Carson Scott (*pro hac vice*)
Roman Leal (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
(415) 512-4000
Carson.Scott@mto.com
Roman.Leal@mto.com

Mark Hanna (Fed. Bar No. 16031)
David J. Rodwin (Fed. Bar No. 18615)
MURPHY ANDERSON, PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
T: (202) 223-2620 | F: (202) 296-9600
mhanna@murphypllc.com
drodwin@murphypllc.com

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION

Daniel McNeil (*pro hac vice*)
General Counsel
American Federation of Teachers, AFL-CIO
555 New Jersey Ave. NW
Washington, DC 20001
T: (202) 393-6305 | F: (202) 393-6385
dmcneil@aft.org

Benjamin L. Berwick (*pro hac* forthcoming)
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Jessica A. Marsden (*pro hac vice*)
PROTECT DEMOCRACY PROJECT
510 Meadowmount Village Circle, No. 328
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Kristy Parker (*pro hac vice*)
Jane Bentrott (*pro hac vice*)
Shalini Goel Agarwal (*pro hac vice*)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
202-843-3092
kristy.parker@protectdemocracy.org
jane.bentrott@protectdemocracy.org
shalini.agarwal@protectdemocracy.org

Laurence M. Schwartztol (*pro hac vice*)
DEMOCRACY AND RULE OF LAW CLINIC
Harvard Law School 1525 Massachusetts Avenue
Cambridge, MA 02138 (617) 998-1877
lschwartztol@law.harvard.edu

REPLY MEMORANDUM ISO PRELIMINARY INJUNCTION