**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| American Federation of Teachers, *et al.*, | Case No. 8:25-cv-00430 |
| *Plaintiffs*, | |
| vs. | Judge:   Hon. Deborah Boardman |
| SCOTT BESSENT, in his official capacity as Secretary of the Treasury, *et al.*, | |
| *Defendants*. | |

**JOINT STATUS REPORT**

The parties submit this status report pursuant to the Court's April 24, 2025 Order.  ECF No. 91.  On March 24, 2025, Defendants appealed this Court's preliminary injunction to the United States Court of Appeals for the Fourth Circuit.  ECF No. 70.  On August 12, 2025, a three-judge panel vacated the preliminary injunction and remanded for further proceedings.  ECF No. 87.  The Fourth Circuit then stayed the mandate pending resolution of Plaintiffs' petition for rehearing en banc.  ECF No. 89.

On April 10, 2026, the en banc Fourth Circuit vacated a preliminary injunction entered by another court in this District that had enjoined U.S. DOGE Service affiliates from accessing the Social Security Administration's systems of records.  *See Am. Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*, 172 F.4th 361 (2026) ("*SSA*").  On April 21, 2026, following the decision in *SSA*, the Fourth Circuit denied Plaintiffs' petition for rehearing en banc in this case.  ECF No. 91.  Accordingly, the case has returned to this Court for further proceedings.

1

**Plaintiffs' Position Statement**

Plaintiffs intend to file a motion for expedited extra-record discovery and do not believe that summary judgment briefing is appropriate until discovery is taken. Plaintiffs had sought extra-record discovery to complete the government's deficient "administrative records" during the preliminary-injunction briefing. ECF No. 53. The Court denied the request without prejudice to renewal when granting the preliminary injunction. ECF No. 68 at 14 n.5; ECF No. 69 at 2. Expedited extra-record discovery is now required for three reasons.

First, discovery into who currently has access to Plaintiffs' confidential records and to whom those records have been disclosed is necessary for Plaintiffs to determine appropriate next steps in this litigation, including what relief is required to protect their most sensitive data.

Second, the government's production of "administrative records"—totaling just 149 non-public pages—was plainly incomplete, as demonstrated by the government's post-briefing supplementation of the record. ECF No. 63. Indeed, the threadbare explanations given in the administrative record to justify Defendants' sweeping grants of access appear to have been pretextual, and Plaintiffs are entitled to probe how DOGE members actually used their access to prove that the grants of access were for an impermissible purpose and therefore in violation of the Privacy Act and Administrative Procedure Act.

Third, recent developments have confirmed the urgent need for discovery. In *SSA*, the Fourth Circuit held that the plaintiffs had established Article III standing because the alleged unlawful disclosure of their members' personal information to DOGE affiliates constituted a harm analogous to the common-law tort of intrusion upon seclusion. 172 F.4th at 367–371. The en banc court therefore abrogated the panel's conclusion in this case that Plaintiffs "seemingly lack standing." *Id.* at 369 (citation omitted). The Fourth Circuit also rejected the panel's approach of

multiplying numerical probabilities to assess whether a plaintiff's "overall odds" of success are "high enough to warrant a preliminary injunction." *Id.* at 366–67 (citation omitted). Nonetheless, the Fourth Circuit vacated the preliminary injunction in *SSA* after concluding that the plaintiffs "did not show—based on the record before the district court when it entered this preliminary injunction—that they were likely to suffer irreparable harm in the absence of preliminary relief." *Id.* at 374 (citation omitted). In doing so, the Fourth Circuit declined to consider the government's "Notice of Corrections to the Record,"[1] submitted after oral argument, as well as whistleblower reports regarding alleged data-security lapses, *id.* at 371 n.8, but noted that the "district court will be free to consider any future requests for appropriate relief or corrective action" on remand. *Id.* Importantly, the Fourth Circuit described the government's "[c]orrections" to the *SSA* record as "alarming" developments that "raise[d] serious questions about [the government's] earlier conduct before the district court." *Id.* The Fourth Circuit found "even more alarming," *id.*, whistleblower allegations concerning "serious data-security lapses" and potential disclosures to third parties, *id.* at 395 (King, J., concurring in part and dissenting in part).

The concerns raised by these reports are not limited to the Social Security Administration and suggest a pattern of alarming conduct. In August 2025, members of the House of Representatives' Committee on Oversight and Government Reform sent OPM Director Scott Kupor a letter informing him that they had "obtained whistleblower evidence suggesting that Trump Administration employees installed by Elon Musk as part of his Department of Government Efficiency (DOGE) effort may have sent highly sensitive federal data, passwords, and code from

---

[1] The Fourth Circuit explained that, in the Notice of Corrections to the Record, "the government admits (1) that it provided inaccurate information to the district court and may not have fully complied with its temporary restraining order; (2) that DOGE used an unauthorized third-party server to share SSA data; and (3) that DOGE team members may have agreed to share SSA data with a political advocacy group that aims to "find evidence of voter fraud and to overturn election results in certain States." *SSA*, 172 F.4th at 371 n.8.

[OPM] to unknown servers outside the government network.[2]  In September 2025, the Department of Education Office of the Inspector General opened a formal investigation after reports that DOGE members had gained high-level access to the Financial Management System and student loan databases.[3]  And a recent government watchdog report issued in April 2026 found that DOGE members within Treasury had "flouted various IT security rules."[4]  Expedited extra-record discovery is necessary to fill the gaps in the record and to allow Plaintiffs to obtain appropriate relief.  *Kravitz v. U.S. Dep't of Com.*, 336 F. Supp. 3d 545, 570 (D. Md. 2018).

**<u>Defendants' Position Statement</u>**

This case is ready to proceed to dispositive briefing. Defendants have already filed certified administrative records, the parties have already fully litigated and the Court has already denied Plaintiffs' prior motion for extra-record discovery, and 15 months have now passed since the filing of this action. Moreover, "the President's 18-month DOGE agenda" is set to expire on July 4, 2026. Exec. Order No. 14158, 90 Fed. Reg. 8441, § 3(c). To facilitate the expeditious resolution of this case, Defendants propose that the parties proceed directly to dispositive briefing on the existing administrative records.

Plaintiffs' anticipated renewed motion for extra-record discovery is not necessary and would not be appropriate under the principles governing judicial review under the APA. Claims under the APA are ordinarily "adjudicated without a trial or discovery, on the basis of an existing

---

[2] *See* Letter to Director Scott Kupor (Aug. 8, 2025), *available at* https://oversightdemocrats.house.gov/imo/media/doc/2025-08-08rgtokuporredogeemployees.pdf.

[3] *See* Letter to Senators from U.S. Dep't of Educ., Office of Inspector Gen. (Sept. 17, 2025), *available at* https://www.warren.senate.gov/imo/media/doc/ed_oig_response_letter_to_senators.pdf; Press Release, Elizabeth Warren (Sept. 19, 2025), *available at* https://www.warren.senate.gov/newsroom/press-releases/education-department-inspector-general-opens-investigation-into-doges-access-to-sensitive-institutional-and-student-loan-borrower-data-following-push-by-warren-senators.

[4] *See* Matt Bracken, FedScoop, *DOGE Duo Ducked Security Rules During Treasury Stint, GAO Finds* (Apr. 29, 2026), *available at* https://fedscoop.com/doge-data-access-treasury-payment-systems-gao-report/.

administrative record." *Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 659 (D. Md. 2007). The standard for going outside the record is necessarily demanding; as this Court has noted, "[t]he bar is high to get discovery in an APA case." Feb. 26, 2025 Hrg. Tr. 13:12. Were it otherwise, "every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency." *Off. of Foreign Assets Control v. Voices in Wilderness*, 382 F. Supp. 2d 54, 63 (D.D.C. 2005) (denying motion for discovery in an APA case). Plaintiffs did not previously meet the high bar for extra-record discovery and are unable to do so in their contemplated renewed motion.

Plaintiffs brought three APA claims challenging what they have defined to be agency decisions to grant access to certain systems of records containing their personal identifying information. The Court's task on the merits will be to look at each agency's certified administrative record and, based on that record, to determine whether those decisions were rational and lawful. *See* 5 U.S.C. § 706 ("In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."). Here, the administrative records contain the materials that informed or reflect each agency's decisionmaking as to systems access for DOGE affiliates. Those materials provide sufficient information for the Court to evaluate Defendants' decisions. Indeed, Plaintiffs have not identified any concrete evidence suggesting that the agencies omitted materials actually considered in connection with the challenged actions—as would be the standard for a motion to supplement the administrative record. *See, e.g.*, *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009)).

Plaintiffs instead seek discovery into matters beyond what would be contained in the administrative record, including evidence of alleged use, retention, dissemination, or transfer of

information occurring *after* the challenged agency decisions. Such inquiries are not part of APA record review, by definition, because they would not be the materials that the agency "directly or indirectly considered" in rendering its decision. *Lee Mem'l Hosp. v. Burwell*, 109 F. Supp. 3d 40, 46 (D.D.C. 2015). Such discovery would also improperly expand the scope of review into hypothetical future harms and alleged conduct collateral to the challenged decisions themselves.

Plaintiffs' theories regarding misuse, disclosure, or dissemination of information by Treasury, Department of Education, or Office of Personnel Management employees—which is the purported basis for their extra-record discovery—are, in any event, speculative and unsupported, and thus cannot justify the relief they will seek. Plaintiffs appear to seek discovery into a theory of "irreparable harm" based on factual circumstances in separate litigation involving different agencies, different employees, and different records.[5] Factual circumstances in other litigation do not establish that the certified administrative records in this case are inaccurate, incomplete, or improperly compiled. *See CASA, Inc. v. Noem*, 2025 WL 3514378 at *9 (D. Md. Dec. 8, 2025) ("Generally, … supplementation is warranted only 'if the agency deliberately or negligently excluded documents that may have been adverse to its decision,' 'if background information was needed to determine whether the agency considered all the relevant factors,' and 'if the agency failed to explain administrative action so as to frustrate judicial review.'"). Nor do the facts in other litigation justify a fishing expedition for Plaintiffs to explore hypotheses of harm that they

---

[5] Namely, in *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, Case No. 1:25-cv-00596-ELC (D. Md.), on January 16, 2026, SSA filed a "Notice of Corrections to the Record" informing the district court that SSA had previously provided inaccurate information to the district court and may not have fully complied with its temporary restraining order. ECF No. 197. Additionally, on March 10, 2026, Plaintiffs filed a "Notice of Factual Development" informing the district court of a news article reporting whistleblower allegations about statements made by a former member of SSA's DOGE team concerning his alleged use, access, and disclosure of sensitive data. ECF No. 208.

have not pled with any factual particularity in the operative complaint nor supported with specific evidence of bad faith. *See Tafas v. Dudas*, 530 F. Supp 2d 786, 797 (E.D. Va. 2008).

Moreover, although Plaintiffs characterize their proposed discovery as "targeted," the discovery described during the parties' meet-and-confer would impose substantial burdens on Defendants and third parties. Plaintiffs indicated that they intend to seek discovery into matters including how data was accessed, by whom, for what purpose, whether information was downloaded or transferred, whether information was retained on devices, and who may have obtained access over the course of many months. Such discovery would require wide-ranging factual inquiries across multiple personnel, agencies, systems, and devices, and would significantly expand this APA action beyond the narrow record-review posture contemplated by the APA.

Although Defendants' preferred course is to proceed directly to dispositive briefing, Defendants alternatively propose that the Court resolve Defendants' contemplated Motion to Dismiss before considering any renewed request for extra-record discovery. Defendants intend to raise jurisdictional and threshold APA defenses, including lack of standing and lack of final agency action. Because Plaintiffs seek discovery that would substantially delay merits briefing, Defendants are not willing to forgo those threshold defenses at the pleading stage, and to instead raise those defenses in a single round of dispositive briefing. Moreover, Plaintiffs principally justify their requested discovery as necessary to establish irreparable harm, yet Defendants intend to argue that the availability of monetary damages for Plaintiffs' alleged privacy injuries under the Privacy Act preclude finding irreparable harm. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551–52 (4th Cir. 1994) (quotation omitted). The Court should therefore resolve those threshold legal issues before permitting burdensome extra-record discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in

a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.").

### Plaintiffs' Response to Defendants' Position Statement

Defendants' request to jump to "dispositive briefing," without any discovery into why or how DOGE affiliates obtained access to millions of Americans' most sensitive data or what those unauthorized agents are doing with that unfettered access, is premature and prejudicial to Plaintiffs. At bottom, it is yet another attempt to stonewall any meaningful review into what actually happened.  But the government cannot hide the ball and then insist the case be decided on a woefully deficient record.  Extra-record discovery is necessary to complete the record, enable effective judicial review, and ensure Plaintiffs have a fair chance to vindicate their significant privacy interests.

Defendants assert that APA cases are "ordinarily" adjudicated without discovery beyond the administrative record.  True enough, but this is no ordinary case.  "Discovery beyond the record may be appropriate where the record is incomplete; where additional information would provide helpful context; where supplemental information would assist the court in determining whether the agency failed to consider relevant factors; and, where the record's integrity has been impugned." *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019).  As Plaintiffs explained in their prior request for extra-record discovery—and as subsequent developments have only confirmed—this case checks each of these boxes.  The government's contrary arguments are meritless.

*First*, the government asserts that the certified administrative records "provide sufficient information for the Court to evaluate Defendants' decisions."  They do not.  The central issue in

this case is whether the DOGE affiliates "have a need for the record[s] in the performance of their duties." 5 U.S.C. § 552a(b)(1). The scattershot of 64 documents that Defendants produced across three federal agencies shed little light on that question. In fact, the sparse record fails to fully answer even the most basic questions: who the DOGE affiliates are, where they work, when they were granted access, how many of them were granted access, which systems of records they may access, and what they are doing with the data contained in those systems. That is not a record fit for summary judgment. Where, as here, "the record fails adequately to explain the agency's course of conduct or the basis for its decision such that judicial review is frustrated, courts may obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary . . . to determine what the agency actually did." *Green v. Nat'l Archives & Recs. Admin.*, 992 F. Supp. 811, 821 (E.D. Va. 1998) (citations omitted); *see Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) (discovery is appropriate when there is "such [a] failure to explain administrative action as to frustrate effective judicial review").

***Second***, the government says that "Plaintiffs have not identified any concrete evidence suggesting that the agencies omitted materials actually considered in connection with the challenged actions." That is demonstrably false. Plaintiffs have previously identified significant omissions from the certified records at each of the three agencies. The Department of Education's certified record, for example, does not even identify all six DOGE affiliates referenced in the declaration submitted by DOGE employee Adam Ramada. *See* ECF No. 53-1 at 5. Indeed, the record contains no reference at all to Mr. Ramada—the individual Defendants handpicked to try to justify DOGE affiliates' access to the Department's systems of records. *Id.* The Office of Personnel Management's record likewise fails to explain how or why DOGE affiliates obtained access to sensitive databases in mid-January 2025 and omits personnel forms referenced in the

materials produced. *Id.* at 7–9. And the Department of Treasury's administrative record omits documents explaining how and why DOGE affiliates were granted access to databases in January 2025, as well as threat-intelligence reports describing that grant of access as "the single greatest insider threat risk" the Bureau of the Fiscal Service had ever faced. *Id.* at 9–11. Furthermore, during the preliminary injunction hearing, this Court observed that the "administrative record . . . doesn't explain to me how these systems work and how access actually happens," JA779 (PI Hr'g Tr. at 50),[6] and that "there's nothing in the administrative record telling me whether [DOGE member Mr. Krause] has access and the nature and scope of his access," JA786 (PI Hr'g Tr. at 57), among other glaring omissions.

The government cannot cherry-pick the administrative record in this manner. "The whole administrative record includes pertinent but unfavorable information," *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 2017 WL 3189446, at *7 (D. Md. July 27, 2017), and the "agency may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). Rather than produce the record that actually existed when the challenged decisions were made, Defendants instead curated a record that omits contemporaneous documents while including documents drafted after this litigation began in an effort to justify decisions made weeks earlier. *See, e.g.*, ED-AR at 5–12 (memoranda prepared two days after the Complaint was filed). Such post hoc rationalizations and manipulation of the administrative record warrant discovery. *See U.S. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

***Third***, the government asks this Court to disregard troubling revelations about deficiencies in the administrative record certified in the *SSA* litigation. That blinkered view is untenable. Here,

---

[6] Available at Docket Number 36 of the Fourth Circuit's docket for the appeal (Case No. 25-1282).

as in *SSA*, members of DOGE were given unfettered access to government data systems under highly questionable circumstances.  The same deficiencies that "raise serious questions about [the government's] conduct before the district court" in the *SSA* case, 172 F.4th at 371 n.8, also cast grave doubt on the completeness and reliability of the record certified here.  That is especially true given the congressional letters and public reports cited in Plaintiffs' affirmative statement, which further suggest that Defendants, much like the Social Security Administration, failed to safeguard highly sensitive personal information when granting access to DOGE members.

The en banc Fourth Circuit in *SSA* expressly contemplated further proceedings on remand to develop the factual record and address the serious concerns about the record.  *See SSA*, 172 F.4th at 371 n.8 ("On remand, . . . the parties will be able to introduce further evidence on these points, and the district court will be free to consider any future requests for appropriate relief or corrective action." (citations omitted)).  So too here.  There is no reason to rush into dispositive briefing on a threadbare record that is clouded by serious questions about its integrity.

*Fourth*, the government's cries of undue burden ring hollow.  Plaintiffs are not seeking to embark on a "fishing expedition."  Plaintiffs seek only the discovery necessary to create a record fit for judicial review and sufficient to vindicate the claims alleged in the Complaint.[7]  That inquiry is focused on the actions of a small cadre of individuals over a discrete period of time.  To the extent such limited discovery imposes a burden, that burden is a consequence of the government's own efforts to obscure why it granted this group unfettered access to the sensitive data of millions of Americans.  That is not a reason to deny discovery; it is precisely why discovery is necessary.

---

[7] Contrary to the government's assertions, Plaintiffs have alleged harm based on the misuse of their data, including by feeding their personal information into unvetted AI tools.  *See, e.g.*, FAC ¶¶ 110–11.  Defendants have been unable to say whether or not that is happening, *see* ECF No. 53-03, but these subsequent revelations have shown that the alleged misuse and dissemination of Plaintiffs data may be even worse than feared.

11

Defendants' alternative proposal—that, rather than race into dispositive motions, the case should stall until the Court resolves the Defendants' motion to dismiss—is simply another attempt to delay any meaningful inquiry into the facts. As Defendants' statement makes clear, they intend to reassert arguments this Court already considered and rejected at the preliminary-injunction stage, *see* ECF No. 68 at 14–35, including a standing argument that is squarely foreclosed by the Fourth Circuit's en banc decision in *SSA*, *see* 172 F.4th at 368–71. Defendants are, of course, entitled to file a motion to dismiss, even one that raises squarely foreclosed arguments. But that is no reason to delay consideration of Plaintiffs' request for expedited extra-record discovery into basic questions about who within DOGE accessed their data, whether that access remains ongoing, and what that access truly was for. *See ClearOne Advantage, LLC v. Kersen*, 2024 WL 278917, at *1 (D. Md. Jan. 25, 2024) ("In the expedited discovery context, courts have adopted a reasonableness standard, determining whether the request is supported by good cause, considering the totality of the circumstances.").

**Defendants' Response to Plaintiffs' Position Statement**

Defendants' position remains that this case is ready to proceed directly to dispositive briefing on the threshold defenses and the merits of this APA case based on the certified administrative records already before the Court. Plaintiffs offer no specific allegations against the defendant agencies that would necessitate supplementation of the record, nor overcome the strong presumption against discovery under the APA.

Plaintiffs have identified no specific gaps or deficiencies in the administrative records related to the challenged decisions to grant DOGE-affiliated employees access to sensitive data. Indeed, Plaintiffs do not contend that any specific documents or category of documents before the agencies at the time of decision-making were omitted. Plaintiffs characterize the agencies'

explanations as "threadbare" based on the number of non-public pages contained in the records, but the sufficiency of an administrative record is not a matter of page counting. And Plaintiffs' contention that the agencies' decisions are not supported by the record goes to the heart of arbitrary and capricious review. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). If Plaintiffs prevail on such an argument, the remedy would be relief under the APA—not sweeping discovery. *See* 5 U.S.C. § 706.

Supplementation is permitted only "if the 'bare record' does not reveal the agency's reasoning or if it appears the agency acted in bad faith." *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 226-27 (4th Cir. 2019). Plaintiffs show neither. While they vaguely suggest that the reasoning reflected in the administrative records was "pretextual," they never identify what purported hidden purpose the agencies supposedly sought to advance, much less explain how or what later uses of data could establish pretext at the time of the challenged decision. And, in any event, "a showing of pretext could render an agency action arbitrary and capricious only in the infinitesimally small number of cases in which the administrative record establishes that an agency's stated rationale did not factor *at all* into the decision, thereby depriving the action of an adequate supporting rationale." *Dep't of Com. v. New York*, 588 U.S. 752, 791 (2019), Thomas, J., concurring in part (emphasis in original).

Furthermore, Plaintiffs have not pled facts in the operative complaint suggesting improper use, retention, or disclosure of their information that could be substantiated through the discovery they seek. Nor have they outlined concrete allegations in their position statement. The reference to the SSA litigation does not have any bearing on the facts of this case, and the references Plaintiffs cite in footnotes 2–4 do not indicate that anything happened to their personal data at OPM, Education, or Treasury as a result of the access decisions at issue. Indeed, as Plaintiffs

acknowledge, they seek discovery into actions postdating the challenged decisions to explore whether additional claims or requests for relief might exist. *Supra* p. 2. But it is Plaintiffs' burden to plead concrete claims, identify allegedly unlawful agency action, and specify the relief sought. Plaintiffs cannot delay resolution of the claims actually pled in order to search for facts that might support other theories of wrongdoing or additional requests for relief.

Defendants recommend proceeding directly to an expedited cross-motion schedule for summary judgment. If Plaintiffs believe limited discovery is necessary to respond to Defendants' motion, they may seek such relief through a properly supported Rule 56(d) request rather than through freestanding expedited motions for extra-record discovery. Under Plaintiffs' proposed schedule, the parties would be required to submit six briefs—all functioning as cross-motions and all before the Court has resolved Defendants' threshold challenges at the pleading stage—which is inconsistent with the local rules, burdensome, and unnecessary. *See* LR 105.2(c). Plaintiffs have not established any need for extra-record discovery, let alone *expedited* extra-record discovery, and are not entitled to bypass the ordinary procedures under the Federal Rules to seek discovery before the Court has resolved threshold issues under Rule 12 and before Rule 16 or 26 conferences have taken place. As such, absent an expedited summary judgment schedule incorporating any Rule 56(d) request Plaintiffs may raise, Defendants oppose submitting briefing on extra-record discovery before resolution of Defendants' motion to dismiss.

### **Plaintiffs' Proposed Briefing Schedule**

To move this case forward expeditiously, Plaintiffs propose that the parties brief the motion to dismiss and Plaintiffs' request for expedited extra-record discovery on the schedule set forth below, with consolidated argument on both motions at the Court's earliest convenience:

- **June 8, 2026**: Government's Motion to Dismiss

- **June 15, 2026**: Plaintiffs' Motion for Expedited Discovery

- **June 22, 2026**: Plaintiffs' Opposition to Motion to Dismiss

- **June 29, 2026**: Government's Reply in Support of Motion to Dismiss

- **July 6, 2026**: Government's Opposition to Motion for Expedited Discovery

- **July 13, 2026**: Plaintiffs' Reply in Support of Motion for Expedited Discovery

**Defendants' Proposed Briefing Schedule**

Defendants propose that the Court resolve the claims in this case expeditiously by proceeding directly to an expedited summary judgment briefing schedule as set forth below, with argument on the parties' cross-motions at the Court's earliest convenience:

- **June 22, 2026**: Government's Motion to Dismiss, or in the Alternative for Summary Judgment

- **July 13, 2026**: Plaintiffs' Opposition to Government's Motion to Dismiss, or in the Alternative for Summary Judgment, Rule 56(f) Request for Discovery, and Cross-Motion for Summary Judgment

- **August 3, 2026**: Government's Reply in Support of Motion to Dismiss, or In the Alternative for Summary Judgment, Opposition to Plaintiffs' Rule 56(f) Request for Discovery, and Opposition to Plaintiffs' Cross-Motion for Summary Judgment

- **August 19, 2026**: Plaintiffs' Reply in Support of Cross-Motion for Summary Judgment

Dated:  May 22, 2026                          Respectfully submitted,

*/s/ Xiaonan April Hu*
Xiaonan April Hu (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 220-1123
April.Hu@mto.com

John L. Schwab (*pro hac vice*)
Wendy Q. Xiao (*pro hac vice*)
Liam Gennari (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 S Grand Ave 50th Floor
Los Angeles, California 90071
(213) 683-9260
John.Schwab@mto.com

Carson Scott (*pro hac vice*)
Roman Leal (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
(415) 512-4000
Carson.Scott@mto.com
Roman.Leal@mto.com

Mark Hanna (Fed. Bar No. 16031)
David J. Rodwin (Fed. Bar No. 18615)
MURPHY ANDERSON PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
T: (202) 223-2620 | F: (202) 296-9600
mhanna@murphypllc.com
drodwin@murphypllc.com

Daniel McNeil (*pro hac vice*)
General Counsel
American Federation of Teachers, AFL-CIO
555 New Jersey Ave. NW
Washington, DC 20001
T: (202) 393-6305 | F: (202) 393-6385
dmcneil@aft.org

Kristy Parker (*pro hac vice*)
Jane Bentrott (*pro hac vice*)
Shalini Goel Agarwal (*pro hac vice*)
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

*/s/ Natalie M. Villalon*
NATALIE M. VILLALON
D.C. Bar. No. 90015127
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
(202) 860-9963
Natalie.M.Villalon@usdoj.gov

Kelly O. Hayes
U.S. Attorney

ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney 36 S.
Charles St., 4th Floor
Baltimore, Maryland 21201
Tel: (410) 209-4813
Fax: (410) 962-2310
Ariana.Arnold@usdoj.gov

*Counsel for Defendants*

202-843-3092
kristy.parker@protectdemocracy.org
jane.bentrott@protectdemocracy.org
shalini.agarwal@protectdemocracy.org

Benjamin L. Berwick (*pro hac* forthcoming)
PROTECT DEMOCRACY PROJECT
15 Main Street, Suite 312
Watertown, MA 02472
(202) 579-4582
ben.berwick@protectdemocracy.org

Jessica A. Marsden (*pro hac vice*)
PROTECT DEMOCRACY PROJECT
510 Meadowmont Village Circle, No. 328
Chapel Hill, NC 27517
(202) 579-4582
jess.marsden@protectdemocracy.org

Laurence M. Schwartztol (*pro hac vice*)
DEMOCRACY AND RULE OF LAW CLINIC
Harvard Law School
1525 Massachusetts Avenue
Cambridge, MA 02138
(617) 998-1877
lschwartztol@law.harvard.edu

*Attorneys for Plaintiffs*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of May, 2026, copies of the Joint Status Report were filed via CM/ECF and thereby served on all counsel of record.


Dated:  May 22, 2026


*/s/ Xiaonan April Hu*
Xiaonan April Hu

18